# UTAH POWER & LIGHT COMPANY *v.* UNITED STATES.

# UNITED STATES *v.* UTAH POWER & LIGHT COMPANY.

# BEAVER RIVER POWER COMPANY *v.* UNITED STATES.

# UNITED STATES *v.* BEAVER RIVER POWER COMPANY.

# NUNN ET AL. *v.* UNITED STATES.

# UNITED STATES *v.* NUNN ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF UTAH.

Nos. 202–207. Argued October 11, 12, 1916.—Decided March 19, 1917.

The power to regulate the use of the lands of the United States, and to prescribe the conditions upon which rights in them may be acquired by others, is vested exclusively in Congress.

The inclusion of such lands within a State does not diminish this power, or subject the lands or interests in them to disposition by the state

power; and, therefore, such lands, within a State, or ways across them, are not subject to be occupied or used for private or *quasi*-public purposes, under state laws, save such laws as have been adopted or made applicable by Congress.

The Act of May 14, 1896, c. 179, 29 Stat. 120, relating exclusively to rights of way and the use of land for electric power purposes, covering the subject fully and specifically and containing new provisions, was evidently designed to be complete in itself, and therefore, by necessary implication, superseded the provisions of Rev. Stats., §§ 2339 and 2340 (derived from the Acts of 1866 and 1870), in so far as they were applicable to such rights of way.

The legislation embodied in Rev. Stats., §§ 2339 and 2340, granted rights of way for ditches, canals and reservoirs only, and did not cover power-houses, transmission lines, or subsidiary structures.

Sections 18–21 of the Act of March 3, 1891, c. 561, 26 Stat. 1095, relate to rights for ditches, canals and reservoirs for the purpose of irrigation and call for the filing of maps, to be effective when approved by the Secretary of the Interior; the Act of May 11, 1898, c. 292, 30 Stat. 404, permits the rights so approved under the Act of 1891 to be used for certain purposes, including power development, as subsidiary to the main purpose of irrigation; but neither act applies where no maps have been filed or approved, where the rights claimed include power-houses, subsidiary buildings and transmission lines, and where irrigation is neither the sole nor the main purpose of the use.

Whether or not the Act of February 15, 1901, c. 372, 31 Stat. 790, superseded other earlier right of way provisions, it obviously took the place of the Act of May 14, 1896, *supra.*

The Act of February 1, 1905, c. 288, 33 Stat. 628, makes no provision for electric power-houses, transmission lines or structures subsidiary thereto, the rights of way granted being only for ditches, canals and reservoirs for diverting, storing and carrying water.

The purposes for which rights of way may be obtained under the Act of February 1, 1905, *supra,* viz., municipal or mining purposes and for milling and reduction of ores, do not include the generating of electricity for general, commercial disposition even though some part of the current is sold in adjacent or distant towns for power, lighting and heating, or to persons engaged in mining, milling or reducing ores.

The United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit. So *held*

in regard to an alleged agreement for the use of federal lands by a power company.

As a general rule, laches or neglect of duty on the part of government officers is no defense to a suit to enforce a public right or protect a public interest.

If this rule has exceptions, they in turn are limited by the principle which places on different planes an ordinary private suit over title and a suit maintained by the United States to enforce its policy respecting land held in trust for all the people. *Causey* v. *United States*, 240 U. S. 399, 402.

The discretion of Congress to control the use of federal lands through administrative regulations is not narrowly confined.

Where such regulations exceed the power of or authorization by Congress, they may be disregarded as void, but not so where they are merely illiberal, inequitable or unwise.

Parties whose occupancy and use of federal lands can be legitimated only by complying with the Act of February 15, 1901, *supra,* may not be heard to complain of the regulations adopted in its execution until they seek a license or permit under the act and conform, or appropriately offer to conform, to all of the regulations which are lawful.

The acts of Congress providing or recognizing that rights to the use of water in streams running through public lands and reservations may be acquired in accordance with local laws do not authorize the appropriation of rights of way through lands of the United States.

In a suit by the United States to enjoin unlawful occupancy and use of its reserved lands, compensation measured by the reasonable value of the occupancy and use, considering its extent and duration, should be included in the decree.

The compensation should not be measured by the charges prescribed for like uses by governmental regulations when the regulations have not been accepted or assented to by the defendants.

THE case is stated in the opinion.

*Mr. William V. Hodges* and *Mr. Graham Sumner,* for the Utah Power & Light Co.

Every State has the power of eminent domain as an attribute of sovereignty. The essence of the power is the right to take property for a public purpose. It depends upon the jurisdiction of the sovereign over the property

and not its jurisdiction over the owner. *Kohl* v. *United States*, 91 U. S. 367; *Boom Co.* v. *Patterson*, 98 U. S. 403; *Luxton* v. *North River Bridge Co.*, 153 U. S. 525; *Adirondack Ry. Co.* v. *New York State*, 176 U. S. 335, 346.

The rights and powers of the United States as the owner of land within a State which is not used or needed for a governmental purpose, are the same as those of other owners of similar land within the same State. Section 3 of Article IV of the Federal Constitution does not create or define the rights or powers of the United States as an owner of land. It relates only to property owned by the United States and confers upon Congress only such rights and powers as are incidents of ownership. The nature and scope of such rights and powers must be determined by the general law of the State in which the land is located. Const. Art. I, § 8, Par. 17; Art. IV, § 3; *Broder* v. *Natoma Water Co.*, 101 U. S. 274; *Fort Leavenworth R. R. Co.* v. *Lowe*, 114 U. S. 525; *Chicago, R. I. & P. Ry. Co.* v. *McGlinn*, 114 U. S. 542; *Ward* v. *Race Horse*, 163 U. S. 504; *Camfield* v. *United States*, 167 U. S. 518; *Clark* v. *Clark*, 178 U. S. 186; *Butte City Water Co.* v. *Baker*, 196 U. S. 119; *Thompson* v. *Fairbanks*, 196 U. S. 516; *Kansas* v. *Colorado*, 206 U. S. 46, 87. The grant of a power to Congress should not be held to impair the sovereign powers of the States unless there is affirmative evidence that it was so intended. The United States has no power to interfere with the governmental operations of the States. *Houston* v. *Moore*, 5 Wheat. 49; *McCulloch* v. *Maryland*, 4 Wheat. 316; *Withers* v. *Buckley*, 20 How. 84; *Texas* v. *White*, 7 Wall. 700; *Collector* v. *Day*, 11 Wall. 113; *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429; *South Carolina* v. *United States*, 199 U. S. 437.

Property of any State or municipality which is not used or needed for a governmental purpose may be taxed by the United States and may be taken and sold on execution. *Klein* v. *New Orleans*, 99 U. S. 149; *Merryweather* v. *Gar-*

*rett*, 102 U. S. 472; *New Orleans* v. *Morris*, 105 U. S. 600; *New Orleans* v. *Louisiana &c. Co.*, 140 U. S. 654; *Werlein* v. *New Orleans*, 177 U. S. 390; *South Carolina* v. *United States*, 199 U. S. 437.

The immunity of the United States or any other sovereign from interference extends only to property which is used or needed for a governmental purpose. *The Davis*, 10 Wall. 15; *The Fidelity*, 8 Fed. Cases, 1189, Case No. 4758; *Long* v. *The Tampico*, 16 Fed. Rep. 491; *Rees* v. *United States*, 134 Fed. Rep. 146.

The mere holding of land not used or needed for a governmental purpose is not a sovereign or governmental function of the United States. The taking of such land by a State in the exercise of its power of eminent domain does not interfere with the governmental functions of the United States. The purely proprietary interests of the United States should yield to the sovereign powers and public needs of the States.

The authorities sustain the power of eminent domain of the States with respect to land of the United States which is not used or needed for a governmental purpose. *United States* v. *City of Chicago*, 7 How. 185; *United States* v. *Railroad Bridge Co.*, 6 McLean, 517; *U. P. R. Co.* v. *B. & M. R. Co.*, 3 Fed. Rep. 106; *Illinois Central R. R. Co.* v. *C . B. & N. R. R. Co.*, 26 Fed. Rep. 477, 478; *U. P. R. R. Co.* v. *Leavenworth, N. & S. Ry. Co.*, 29 Fed. Rep. 728; *Jones* v. *F. C. & P. R. Co.*, 41 Fed. Rep. 70, 72; *Camp* v. *Smith*, 2 Minnesota, 131; *State* v. *Bachelder*, 5 Minnesota, 178, 180; *Simonson* v. *Thompson*, 25 Minnesota, 450, 453; *Burt* v. *Mechanics Ins. Co.*, 106 Massachusetts, 356, 360; Lewis on Eminent Domain, 3d. ed., Vol. II, § 414.

The failure of Congress to provide for actions to condemn land of the United States does not affect the substantive rights or powers of the States. The United States by bringing this suit has submitted to the jurisdiction of the court. When a public service corporation

constructs its plant upon the land of another without condemnation or agreement it will not be ousted at the suit of the owner, but will merely be compelled to pay damages measured by the reasonable value of the land. *Roberts* v. *Northern Pacific R. R. Co.*, 158 U. S. 1; *Northern Pacific R. R. Co.* v. *Smith*, 171 U. S. 260; *Donohue* v. *R. R. Co.*, 214 U. S. 499.

The land involved in this suit was vacant, unoccupied, unappropriated land, open to entry and settlement under the general land laws. These laws amounted to a declaration by Congress that the land was not needed for any governmental purpose. The reservation of this land later as a national forest did not amount to a declaration that it was needed for a governmental purpose.

The State of Utah has the power of eminent domain for the purpose of developing hydro-electric power and selling the same to the public and has authorized the defendant to use the land involved in this action for that purpose. Act of Territory of Utah, approved Feb. 20, 1880, § 15; Rev. Stat. of Utah, § 1288x21; *Clark* v. *Nash*, 198 U. S. 361; *Strickley* v. *Highland &c. Co.*, 200 U. S. 527; *Offield* v. *N. Y., N. H. & H. R. R. Co.*, 203 U. S. 372; *Mt. Vernon &c. Co.* v. *Alabama Inter-State Power Co.*, 240 U. S. 30.

The various acts of Congress recognize that rights of way on the public land for the storage and conveyance of water can be acquired under the local customs, laws and decisions of courts without the permission of the Secretary of the Interior. Acts of July 26, 1866, 14 Stat. 251; July 9, 1870, 16 Stat. 217; Rev. Stats., §§ 2339, 2340; Acts of March 3, 1891, 26 Stat. 1101; Jan. 21, 1895, 28 Stat. 635; May 14, 1896, 29 Stat. 120; May 11, 1898, 30 Stat. 404; Feb. 15, 1901, 31 Stat. 790; Reclamation Act, 1902, 32 Stat. 390; Forest Reserve Act, 1905, 33 Stat. 628; *Jennison* v. *Kirk*, 98 U. S. 453; *Broder* v. *Natoma Water Co.*, 101 U. S. 274; *United States* v. *Rio Grande Irrigation Co.*,

174 U. S. 690, 704; *Gutierres* v. *Albuquerque Land Co.*, 188 U. S. 545, 553.

Sections 2339 and 2340, Rev. Stats., were not repealed or superseded by the subsequent acts of Congress. *Rasmussen* v. *Blush*, 83 Nebraska, 678; 85 Nebraska, 198; *United States* v. *Utah Power & Light Co.*, 209 Fed. Rep. 554; *Cottonwood Ditch Co.* v. *Thom*, 39 Montana, 115, 118; *Lynch* v. *Irrigation Co.*, 131 Pac. Rep. 829; *Pecos &c. Co.*, 15 L. D. 470 (1892); *Cache County Canal Co.*, 16 L. D. 192 (1893); *Kings River Power Co.* v. *Knight*, 32 L. D. 144 (1903); *Lincoln County Co.* v. *Big Sandy Co.*, 32 L. D. 463 (1904).

The Act of February 15, 1901, did not supersede or repeal the Act of March 3, 1891. *Lynch* v. *Irrigation Co.*, 131 Pac. Rep. 829; *United States* v. *Lee*, 15 N. M. 382; *United States* v. *Port Neuf &c. Co.*, 213 Fed. Rep. 601; *Regulations under Act of 1901*, 31 L. D. 13; *Lincoln County Co.* v. *Big Sandy Co.*, 32 L. D. 463; *Regulations under Act of 1905*, 33 L. D. 451; 33 L. D. 564; *Regulations under Act of 1901*, 34 L. D. 228; 35 L. D. 154; 36 L. D. 18; 37 L. D. 338; *Sierra Ditch and Water Co.*, 38 L. D. 547; *DeWeese* v. *Henry Investment Co.*, 39 L. D. 27; *California-Nevada Canal Co.*, 40 L. D. 380; *Instruction*, 41 L. D. 10; *Malone Land & Water Co.*, 41 L. D. 138; *H. H. Tompkins*, 41 L. D. 516; *Joseph Williams*, 42 L. D. 111; *Manti Livestock Co.*, 42 L. D. 217; *George B. McFadden*, 42 L. D. 562; *Boughner* v. *Magenheimer et al.*, 42 L. D. 595.

There is no obvious repugnancy between §§ 2339 and 2340, Rev. Stats., and the later acts of Congress.

The defendant has not violated any lawful regulations of the Secretary of the Interior or the Secretary of Agriculture, and has the right under the Acts of 1901 and 1905 to maintain and operate its structures. "Municipal purposes" as used in the Act of 1905 includes all purposes for which a municipality may use water, and is coextensive with public purposes.

A sovereign is with respect to its property or proprietary interests subject to the principles of equitable estoppel in the same manner and under the same circumstances as a private individual or corporation. *Indiana* v. *Foulk*, 11 Fed. Rep. 398; *United States* v. *Willamette &c. Wagon-Road Co.*, 54 Fed. Rep. 807; *Michigan* v. *Railroad Co.*, 69 Fed. Rep. 116; *Walker* v. *United States*, 139 Fed. Rep. 409; *Mountain Copper Co.* v. *United States*, 142 Fed. Rep. 625; *Iowa* v. *Carr*, 191 Fed. Rep. 257; *Iowa* v. *Trust Co.*, 191 Fed. Rep. 270; *Hemmer* v. *United States*, 204 Fed. Rep. 898. It makes no difference in this connection whether the defendant has or has not the power of eminent domain. *N. Y. City* v. *Pine*, 185 U. S. 93; *West & Co.* v. *Octoraro Water Co.*, 159 Fed. Rep. 528; *McCann* v. *Chasm Power Co.*, 211 N. Y. 301.

The United States may be deprived of rights or interests in land under the principles of equitable estoppel. *Jennison* v. *Kirk*, 98 U. S. 453; *Broder* v. *Natoma Water Co.*, 101 U. S. 274.

*Mr. Clyde C. Dawson* and *Mr. Frank H. Short*, with whom *Mr. Frank J. Gustin*, *Mr. Charles A. Gillette*, *Mr. Dean F. Brayton* and *Mr. H. R. Waldo* were on the briefs, for the Beaver River Power Company and Nunn *et al.*

The power to dispose of the territory or other property belonging to the United States should not be so construed as to interfere with the governmental powers of any State. The admission of a new State into the Union, *ipso facto*, conveys to that State such jurisdiction and interest, over all the territory within its borders, as is essential to the exercise of its proper functions, under the Constitution, upon an equal footing with the original States. *Pollard's Lessee* v. *Hagan*, 3 How. 212, 218 *et seq.; Veazie* v. *Moor*, 14 How. 568, 572, 573; *Withers* v. *Buckley*, 20 How. 84, 92, 93; *Escanaba Company* v. *Chicago*, 107

U. S. 678, 687; *Huse* v. *Glover*, 119 U. S. 543, 548, 549; *Ward* v. *Race Horse*, 163 U. S. 504, 514; *Sands* v. *Manistee River Improvement Co.*, 123 U. S. 258, 296.

The State has a right, directly or through its authorized agencies, to establish rights of way or easements of a local public nature over vacant federal lands. *United States* v. *Railroad Bridge Co.*, 6 McLean, 517, 27 Fed. Cas. 692, 693.

The title to lands of the United States under navigable waters within its territories passes to the new State in which such lands are situated.

The jurisdiction of the State is not prejudiced by reason of the ownership by the federal government of lands situated within the borders of the State and not reserved for any of the federal uses enumerated in the Constitution. *People* v. *Shearer*, 60 California, 658; *United States* v. *Cornell*, 2 Mason, 60; *Woodruff* v. *North Bloomfield Co.*, 18 Fed. Rep. 772; *Mobile* v. *Eslava*, 16 Pet. 234, 253; *Illinois R. R. Co.* v. *Illinois*, 146 U. S. 434; *New Orleans* v. *United States*, 10 Pet. 662, 736; *Coyle* v. *Smith*, 221 U. S. 559, 566; *South Carolina* v. *United States*, 199 U. S. 437; *Fort Leavenworth R. R. Co.* v. *Lowe*, 114 U. S. 525.

The laws of the State governing the appropriation and use of water for all purposes, except interstate and foreign commerce, are exclusive. They form part of the internal police of the State and are paramount to any proprietary interest or legislative power of the federal government. *Jennison* v. *Kirk*, 98 U. S. 453, 458; *Broder* v. *Water Company*, 101 U. S. 274, 276; *Gutierres* v. *Albuquerque*, 188 U. S. 545; *Kansas* v. *Colorado*, 206 U. S. 46; *Hudson County Water Co.* v. *McCarter*, 209 U. S. 349, 356; *United States* v. *Chandler-Dunbar Co.*, 229 U. S. 53, *III Documentary History of the Constitution*, 306, 307, 308, 314; *Federalist*, Nos. 78, 32, 39, 45; *Illinois* v. *Economy Light & Power Co.*, 234 U. S. 497; *Utah Session Laws*, 1880, 40; *ib.*, 1896, 316; *ib.*, 1897, 223.

The use of water for beneficial purposes may be declared by the laws of the State to be a public use.

General acts of Congress intended to aid and encourage the development of the country should be liberally construed so as to effectuate their purpose.

The Acts of 1866 and 1870, now §§ 2339 and 2340, Rev. Stats., are to be construed as recognizing and confirming, and not as granting, rights of way over the public land for the beneficial use of water. Such rights are acquired by appropriation under the local laws. *Jennison* v. *Kirk*, 98 U. S. 453; *Broder* v. *Water Co.*, 101 U. S. 274; *Kansas* v. *Colorado*, 206 U. S. 46, 87; *Hough* v. *Porter*, 51 Oregon, 318; *Boquillas Land & Water Co.* v. *Curtis*, 213 U. S. 339, 344.

The Act of March 3, 1891, 26 Stat. 1095, does not repeal §§ 2339 and 2340. All beneficial uses of water are covered by said act; and rights of way under it may be reserved by the filing and approval of maps, or may be acquired by definite location and construction alone. In this respect the act is like the general railroad right-of-way act of 1875. *Jamestown R. R. Co.* v. *Jones*, 177 U. S. 125; *Stalker* v. *Oregon Short Line R. R. Co.*, 225 U. S. 142; *Minidoka & S. W. Ry. Co.* v. *United States*, 235 U. S. 211; *Cache Valley Canal Co.*, 16 L. D. 192; *Lincoln County Co.* v. *Big Sandy Co.*, 32 L. D. 27, 33.

Regulations of the departments which are inconsistent with the acts of Congress, or which assume legislative powers, are void.

The easements in question are permanent in nature, are used in serving the public, and must be continued. Upon principles of equitable estoppel a license cannot be revoked after expenditures are made thereon by the licensee, when the use is in its nature permanent [citing numerous cases].

The regulations of the Departments of the Interior and of Agriculture, which are sought to be enforced, are un-

authorized by the Act of February 15, 1901, 31 Stat. 790, or any other act of Congress, are attempts at the exercise of legislative power, and are null and void.

The power of the United States by its own laws to protect its property from private waste or trespass does not give it a general jurisdiction over vacant lands within a State.

Section 2339, Rev. Stats., is not inconsistent with and has not been repealed by any subsequent congressional legislation, including the Acts of May 14, 1896, and February 15, 1901. Repeals by implication are not favored.

The Act of 1901, considered as a substitute for other laws and as providing the only method under which rights of way could be obtained, acquired or used over the public lands for the purposes indicated, would be unconstitutional.

*Mr. Assistant Attorney General Knaebel* for the United States.

By leave of court, a brief was filed by the Attorneys General of the States of Utah, Colorado, Idaho, Nevada and Nebraska, and Messrs. Frank H. Short, Clyde C. Dawson and S. A. Bailey, special counsel, as *amici curiæ:*

The act of Congress admitting a State operates as a grant of the title to federal lands submerged by navigable waters, subject to the commercial power of the federal government. Likewise the jurisdiction over its internal affairs, transferred to the new State by virtue of the act of admission, carries with it the right to establish, control and regulate local public uses and facilities over the vacant public lands not subjected to federal jurisdiction for the purposes enumerated or implied in the Constitution. Even the grant of a privilege carries with it the rights to which the privilege is attached and without which its exercise would be impossible.

The power of the United States to protect its property by its own legislation from private trespass and waste does not, and cannot, imply a general police power over the vacant public lands within a State.

The section in the Constitution relating to the admission of new States, and the concomitant disposition of the public lands, excludes, by its express terms, any construction by which the United States may claim any additional governmental or police powers within the States in which such public land is situated.

The existence of easements of a public nature over vacant federal lands does not interfere with the disposal of such lands by the federal government, but is in aid thereof; and the claim made by the States of the right to control the creation and continuance of such easements, within their respective territorial jurisdictions, does not conflict with the power of Congress "to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States." *Idaho-Iowa Lateral & Reservoir Co.* v. *Fisher*, 27 Idaho, 695; *Homer E. Brayton*, 31 L. D. 364, 365; *Crane Falls Co.* v. *Snake River Co.*, 24 Idaho, 77.

The ninth section of the Act of July 26, 1866 (Rev. Stats., § 2339), was an express recognition of the right of the States to regulate the appropriation and use of water for all purposes except navigation, and of the subordination of the proprietary interest of the United States in its vacant public lands to that right. *Broder* v. *Water Company*, 101 U. S. 274, 275; *Butte City Water Co.* v. *Baker*, 196 U. S. 119; *Stowell* v. *Johnson*, 7 Utah, 215.

Subsequent acts of Congress on the subject not only can, but should, be construed consistently with this right of the States so recognized by the Act of July 26, 1866. As an act intended to encourage the development of the country, it should be liberally construed.

The Act of March 3, 1891, 26 Stat. 1095, and acts

supplemental thereto, were intended to encourage the appropriation of water for beneficial purposes by providing for the reservation of rights of way over the public land in advance of construction and use, and were not intended to limit or modify the authority and operation of the local laws in respect thereof.

The Acts of May 14, 1896, 29 Stat. 120, February 26, 1897, 29 Stat. 599; May 11, 1898, 30 Stat. 404; February 15, 1901, 31 Stat. 790, and § 4 of the Act of February 1, 1905, 33 Stat. 628, were intended to correct erroneous rulings by the Land Department under the Act of March 3, 1891, *supra,* and not to supersede, modify or repeal the ninth section of the Act of July 26, 1866, nor to interfere with the operation of the local laws on the subject of the beneficial use of water.

The rights of way mentioned in the Act of February 15, 1901, *supra,* are all permanent in their nature; and from the body of the act it is plain that the only one which is subject to purchase and termination after construction is the right of way for telephone and telegraph lines, and that this can only be terminated by paying the valuation to be fixed in accordance with the prior statute referred to in the act. The administration of the Act of February 15, 1901, remains, therefore, in the hands of the Secretary of the Interior and was not transferred to the Secretary of Agriculture in forest reservations by the Act of February 1, 1905.

The regulations of the Departments of the Interior and of Agriculture, assuming entire control over the appropriation and use of water on the public domain, sought to be enforced in this and similar cases, are unauthorized by any Act of Congress, and are unconstitutional and void. The laws and policy of a State may be framed and shaped to suit its conditions of climate and soil. The State has the police power to provide for its internal development and to this end to declare what uses are public within its

territorial jurisdiction and to regulate the same. *Clark* v. *Nash*, 198 U. S. 361; *Offield* v. *N. Y., N. H. & H. R. Co.*, 203 U. S. 372, 377; *Strickley* v. *Highland Boy Gold Min. Co.*, 200 U. S. 527; *Bacon* v. *Walker*, 204 U. S. 311, 315.

The claims of the federal government, in this and similar cases, are devoid of equity. *Woodruff* v. *Trapnall*, 10 How. 190, 207; *Indiana* v. *Milk*, 11 Fed. Rep. 389, 397.

*Mr. John R. Dixon*, by leave of court, filed a brief as *amicus curiæ.*

*Mr. William B. Bosley*, by leave of court, filed a brief as *amicus curiæ.*

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

We are concerned here with three suits by the United States to enjoin the continued occupancy and use, without its permission, of certain of its lands in forest reservations in Utah as sites for works employed in generating and distributing electric power, and to secure compensation for such occupancy and use in the past. The reservations were created by executive orders and proclamations with the express sanction of Congress. Almost all the lands therein belong to the United States and before the reservations were created were public lands subject to disposal and acquisition under the general land laws. The works in question consist of diversion dams, reservoirs, pipe lines, power houses, transmission lines and some subsidiary structures. In the aggregate these are used in collecting water from mountain streams, in conducting it for considerable distances to power houses where the force arising from its descent through the pipe lines is transmuted into electric energy, and in transmitting that energy to places beyond the reservations, where it is sold

to whoever has occasion to use it for power, lighting or heating. In each case some part of the works is on private lands, but much the greater part is on lands of the United States. Part was constructed before and part after the reservation was created, but all after 1896 and nearly all after 1901. The entire works are conducted in each instance as a commercial enterprise, and not as an incident to or in aid of any other business in which the defendant is engaged.

In occupying and using the government lands as sites for these works the defendants have proceeded upon the assumption that they were entitled so to do without seeking or securing any grant or license from the Secretary of the Interior or the Secretary of Agriculture under the legislation of Congress, and, in truth, they have neither applied for nor received such a grant or license from either. But, notwithstanding this, they assert that they have acquired and are invested with rights to occupy and use permanently, for the purposes indicated, the government lands upon which the works are located.

The principal object of the suits, as is said in one of the briefs, is to test the validity of these asserted rights and, if they be found invalid, to require the defendants to conform to the legislation of Congress or, at their option, to remove from the government lands. The District Court ruled against the defendants upon the main question, following a decision of the Circuit Court of Appeals in another case, 209 Fed. Rep. 554, but refused the Government's prayer for pecuniary relief. Cross appeals were then taken directly to this court.

The first position taken by the defendants is that their claims must be tested by the laws of the State in which the lands are situate rather than by the legislation of Congress, and in support of this position they say that lands of the United States within a State, when not used or needed for a fort or other governmental purpose of the

United States, are subject to the jurisdiction, powers and laws of the State in the same way and to the same extent as are similar lands of others. To this we cannot assent. Not only does the Constitution (Art. IV, § 3, cl. 2) commit to Congress the power "to dispose of and make all needful rules and regulations respecting" the lands of the United States, but the settled course of legislation, congressional and state, and repeated decisions of this court have gone upon the theory that the power of Congress is exclusive and that only through its exercise in some form can rights in lands belonging to the United States be acquired. True, for many purposes a State has civil and criminal jurisdiction over lands within its limits belonging to the United States, but this jurisdiction does not extend to any matter that is not consistent with full power in the United States to protect its lands, to control their use and to prescribe in what manner others may acquire rights in them. Thus while the State may punish public offenses, such as murder or larceny, committed on such lands, and may tax private property, such as live stock, located thereon, it may not tax the lands themselves or invest others with any right whatever in them. *United States* v. *McBratney,* 104 U. S. 621, 624; *Van Brocklin* v. *Tennessee,* 117 U. S. 151, 168; *Wisconsin Central R. R. Co.* v. *Price Co.,* 133 U. S. 496, 504. From the earliest times Congress by its legislation, applicable alike in the States and Territories, has regulated in many particulars the use by others of the lands of the United States, has prohibited and made punishable various acts calculated to be injurious to them or to prevent their use in the way intended, and has provided for and controlled the acquisition of rights of way over them for highways, railroads, canals, ditches, telegraph lines and the like. The States and the public have almost uniformly accepted this legislation as controlling, and in the instances where it has been questioned in this court its validity has been upheld and

its supremacy over state enactments sustained. *Wilcox*
v. *Jackson,* 13 Pet. 498, 516; *Jourdan* v. *Barrett,* 4 How.
168, 185; *Gibson* v. *Chouteau,* 13 Wall. 92, 99; *Camfield*
v. *United States,* 167 U. S. 518; *Light* v. *United States,*
220 U. S. 523, 536–537. And so we are of opinion that
the inclusion within a State of lands of the United States
does not take from Congress the power to control their
occupancy and use, to protect them from trespass and
injury and to prescribe the conditions upon which others
may obtain rights in them, even though this may in-
volve the exercise in some measure of what commonly
is known as the police power. "A different rule," as was
said in *Camfield* v. *United States, supra,* "would place the
public domain of the United States completely at the
mercy of state legislation."

It results that state laws, including those relating to the
exercise of the power of eminent domain, have no bearing
upon a controversy such as is here presented, save as they
may have been adopted or made applicable by Congress.

The next position taken by the defendants is that their
claims are amply sustained by §§ 2339 and 2340 of the
Revised Statutes, originally enacted in 1866 and 1870.
By them the right of way over the public lands was
granted for ditches, canals and reservoirs used in diverting,
storing and carrying water for "mining, agricultural,
manufacturing and other purposes." The extent of the
right of way in point of width or area was not stated and
the grant was noticeably free from conditions. No appli-
cation to an administrative officer was contemplated, no
consent or approval by such an officer was required, and
no direction was given for noting the right of way upon
any record. Obviously this legislation was primitive.
At that time works for generating and distributing electric
power were unknown, and so were not in the mind of
Congress. Afterwards when they came into use it was
found that this legislation was at best poorly adapted

to their needs. It was limited to ditches, canals and reservoirs, and did not cover power houses, transmission lines or the necessary subsidiary structures. In that situation Congress passed the Act of May 14, 1896, c. 179, 29 Stat. 120, which related exclusively to rights of way for electric power purposes, and read as follows:

"That the Secretary of the Interior be, and hereby is, authorized and empowered, under general regulations to be fixed by him, to permit the use of right of way to the extent of twenty-five feet, together with the use of necessary ground, not exceeding forty acres, upon the public lands and forest reservations of the United States, by any citizen or association of citizens of the United States, for the purposes of generating, manufacturing, or distributing electric power."

We regard it as plain that this act superseded §§ 2339 and 2340 in so far as they were applicable to such rights of way. It dealt specifically with that subject, covered it fully, embodied some new provisions and evidently was designed to be complete in itself. That it contained no express mention of ditches, canals and reservoirs is of no significance, for it was similarly silent respecting power houses, transmission lines and subsidiary structures. What was done was to provide for all in a general way without naming any of them.

As the works in question were constructed after §§ 2339 and 2340 were thus superseded, the defendants' claims receive no support from those sections. No attempt was made to conform to the Act of 1896, and nothing is claimed under it.

Some reliance is placed upon §§ 18–21 of the Act of March 3, 1891, c. 561, 26 Stat. 1095, and the Act of May 11, 1898, c. 292, 30 Stat. 404. The first relate to rights of way for ditches, canals and reservoirs for the purpose of irrigation, and, differing from §§ 2339 and 2340, call for the filing of maps of location which are to be effective

and noted upon the public records when approved by the Secretary of the Interior. The second permits rights of way "approved" under the first to be used for certain additional purposes, including the development of power, "as subsidiary to the main purpose of irrigation." But here no maps of location have been filed or approved, the rights of way are not claimed merely for ditches, canals or reservoirs, and irrigation is neither the sole nor the main purpose for which any part of the asserted rights of way is used. So it is apparent that the reliance upon these acts is ill founded.

In the oral and written arguments counsel have given much attention to the Act of February 15, 1901, c. 372, 31 Stat. 790. On the part of the Government it is insisted that the comprehensive terms of the act and its legislative history [1] conclusively show that it was adopted as a complete revision of the confused and fragmentary right-of-way provisions found in several earlier enactments, including those already noticed, but this need not be considered or decided now beyond observing that the act obviously superseded and took the place of the law of May 14, 1896, *supra*. The act empowers the Secretary of the Interior, "under general regulations to be fixed by him," to permit the use of rights of way through the public lands, forest reservations,[2] etc., for any one or more of several purposes, including the generation and distribution of electric power, carefully defines the extent of such rights of way and embodies provisions not found in any of the earlier enactments. But the defendants can claim nothing under the act. They have not conformed

---

[1] Report Secretary of the Interior, 1899, pp. 6–7; House Report, 1850, 56th Cong., 1st Sess.; Cong. Rec., 56th Cong., 1st Sess., 6762; *ibid.*, 56th Cong., 2d Sess., 2075.

[2] The forest reserves were measurably placed under the control of the Secretary of Agriculture by the Act of February 1, 1905, c. 288, 33 Stat. 628.

to its requirements and have not received any permission or license under it.

Another statute upon which the defendants rely is the Act of February 1, 1905, c. 288, 33 Stat. 628. But we think it does not help them. While providing for rights of way in forest reserves for ditches, canals, reservoirs and the like "for municipal or mining purposes, and for the purposes of the milling and reduction of ores," it makes no provision for power houses, transmission lines or subsidiary structures such as the defendants have. And, in our opinion, the purposes named do not include those for which the works in question are used. It is not enough that some of the electric energy is sold in adjacent or distant towns or to those who are engaged in mining or in milling or reducing ores. In an opinion rendered June 4, 1914, the Attorney General said of this act: "The rights granted are described with particularity. The right of way for transmitting and distributing electrical power is not included expressly, nor is it so intimately related to any of the rights enumerated that a grant of the one must needs be implied as essential to the enjoyment of the other." 30 Ops. A. G. 263. We regard this as the correct view.

In their answers some of the defendants assert that when the forest reservations were created an understanding and agreement was had between the defendants, or their predecessors, and some unmentioned officers or agents of the United States to the effect that the reservations would not be an obstacle to the construction or operation of the works in question; that all rights essential thereto would be allowed and granted under the Act of 1905; that consistently with this understanding and agreement and relying thereon the defendants, or their predecessors, completed the works and proceeded with the generation and distribution of electric energy, and that in consequence the United States is estopped to question the right of the defendants to maintain and operate the works. Of this

it is enough to say that the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit. *Lee* v. *Munroe,* 7 Cranch, 366; *Filor* v. *United States,* 9 Wall. 45, 49; *Hart* v. *United States,* 95 U. S. 316; *Pine River Logging Co.* v. *United States,* 186 U. S. 279, 291.

As presenting another ground of estoppel it is said that the agents in the forestry service and other officers and employees of the Government, with knowledge of what the defendants were doing, not only did not object thereto but impliedly acquiesced therein until after the works were completed and put in operation. This ground also must fail. As a general rule laches or neglect of duty on the part of officers of the Government is no defense to a suit by it to enforce a public right or protect a public interest. *United States* v. *Kirkpatrick,* 9 Wheat. 720, 735; *Steele* v. *United States,* 113 U. S. 128, 134; *United States* v. *Beebe,* 127 U. S. 338, 344; *United States* v. *Insley,* 130 U. S. 263, 265–266; *United States* v. *Dalles Military Road Co.,* 140 U. S. 599, 632; *United States* v. *Michigan,* 190 U. S. 379, 405; *State ex rel. Lott* v. *Brewer,* 64 Alabama, 287, 298; *State* v. *Brown,* 67 Illinois, 435, 438; *Den* v. *Lunsford,* 20 N. Car. 407; *Humphrey* v. *Queen,* 2 Can. Exch. 386, 390; *Queen* v. *Black,* 6 Can. Exch. 236, 253. And, if it be assumed that the rule is subject to exceptions, we find nothing in the cases in hand which fairly can be said to take them out of it as heretofore understood and applied in this court. A suit by the United States to enforce and maintain its policy respecting lands which it holds in trust for all the people stands upon a different plane in this and some other respects from the ordinary private suit to regain the title to real property or to remove a cloud from it. *Causey* v. *United States,* 240 U. S. 399, 402.

By their answers the defendants assert that some of the

administrative regulations promulgated under the Act of February 15, 1901, go beyond what is appropriate for the protection of the interest of the United States and are unconstitutional, unauthorized and unreasonable. The regulations occupy many printed pages and the answers do not adequately show which regulations are assailed or the grounds upon which the invalidity of particular ones is asserted. That Congress intends there shall be some administrative regulations on the subject is plainly shown in the act, and that its discretion in the matter is not narrowly confined is shown by our decisions in *United States* v. *Grimaud*, 220 U. S. 506, and *Light* v. *United States, ibid*, 523. If any of the regulations go beyond what Congress can authorize or beyond what it has authorized, those regulations are void and may be disregarded; but not so of such as are thought merely to be illiberal, inequitable or not conducive to the best results. In the nature of things it hardly can be that all are invalid, and this was conceded in argument. The defendants have not complied with any, or really offered to do so, but have proceeded upon the theory that the act and all the regulations are without application to their situation. In this they have been mistaken, and so are occupying and using reserved lands of the United States without its permission and contrary to its laws. Not until they seek a license or permit under the act and conform, or appropriately offer to conform, to all lawful regulations thereunder will they be in a position to complain that some of the regulations are invalid. As we interpret the decrees below, they enjoin the defendants from occupying and using the lands of the United States until, and only until, they acquire rights to do so by complying with some applicable statute and the lawful regulations. Of course, we do not imply that any of the regulations are invalid but leave that question entirely open.

Much is said in the briefs about several congressional

enactments providing or recognizing that rights to the use of water in streams running through the public lands and forest reservations may be acquired in accordance with local laws, but these enactments do not require particular mention, for this is not a controversy over water-rights but over rights of way through lands of the United States, which is a different matter and is so treated in the right-of-way acts before mentioned. See *Snyder* v. *Colorado Gold Dredging Co.*, 181 Fed. Rep. 62, 69.

As the defendants have been occupying and using reserved lands of the United States without its permission and contrary to its laws, we think it is entitled to have appropriate compensation therefor included in the decree. The compensation should be measured by the reasonable value of the occupancy and use, considering its extent and duration, and not by the scale of charges named in the regulations as prayed in the bill. However much this scale of charges may bind one whose occupancy and use are under a license or permit granted under the statute, it cannot be taken as controlling what may be recovered from an occupant and user who has not accepted or assented to the regulations in any way.

It follows that the decrees are right and must be affirmed, save as they deny the Government's right to compensation for the occupancy and use in the past, and in that respect they must be reversed.

*It is so ordered.*