UNITED STATES v. FISHER et al.

(District Court, W. D. Louisiana, Shreveport Division. March 12, 1926.)

No. 4517.

1. **Public lands ⬥⮞21—Congress has power to prescribe conditions under which public lands may be acquired and to punish interference therewith (Const. art. 4, § 3, par. 2).**

Under Const. art. 4, § 3, par. 2, Congress has full power to prescribe conditions under which public lands may be acquired, and to punish those committing acts calculated to interfere with conditions and regulations.

2. **Evidence ⬥⮞11.**

It is common knowledge that, whenever public lands have been opened to entry, there has been a rush and scramble to be first to obtain them.

3. **Public lands ⬥⮞21—Statute making false representations to settlers pertaining to location of public lands a misdemeanor held valid (Const. art. 4, § 3, par. 2; Act Feb. 23, 1917 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10226a]).**

In view of Const. art. 4, § 3, par. 2, Act Feb. 23, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10226a), providing that making of false representations to settlers and others with intent to deceive them as to location of public lands of United States, thereby deceiving them, shall constitute a misdemeanor, is valid, as within power of Congress.

Hugh C. Fisher and others were indicted for making false representations respecting public lands of the United States. On named defendant's demurrer and motions to quash indictment. Pleas overruled.

Philip H. Mecom and J. Fair Hardin, both of Shreveport, La., for the United States.

Looney & Logan, of Shreveport, La., for defendant.

DAWKINS, District Judge. The defendant, Hugh C. Fisher, has attacked the indictment in this case by three separate pleas, two styled "motions to quash," and the third "a demurrer." The first is based upon the alleged unconstitutionality of the Act of Congress of February 23, 1917 (39 Stat. 936 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10226a]), entitled "An act to punish persons who make false representations to settlers and others pertaining to the public lands of the United States," under which the indictment is laid, and a determination thereof adversely to defendant will dispose largely of the other two, one of which is based upon the proposition that, because the bill does not charge the lands,

with respect to which the misrepresentations were made, were in fact public lands, the court "is without jurisdiction to punish" the defendant, and the other, or demurrer, rests upon the assertion that, for the reasons set forth in the other pleas, the bill does not charge an offense under the laws of the United States.

The plea of unconstitutionality rests upon the contention that Congress is without power to punish misrepresentations with respect to its lands, unless the property involved actually belongs to the government, regardless of the false and fraudulent nature of the representations, and the fact that the parties charged may have induced those who have been defrauded to believe that the same were the property of the United States and subject to entry under the national land law.

The act assailed, quoted in full, reads as follows:

"An act to punish persons who make false representations to settlers and others pertaining to the public lands of the United States.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that any person who, for a reward paid or promised to him in that behalf, shall undertake to locate for an intending purchaser, settler, or entryman any public lands of the United States subject to disposition under the public land laws, and who shall wilfully and falsely represent to such intending purchaser, settler, or entryman that any tract of land shown to him is public land of the United States subject to sale, settlement, or entry, or that it is of a particular surveyed description, with intent to deceive the person to whom such representation is made, or who, in reckless disregard of the truth, shall falsely represent to any such person that any tract of land shown to him is public land of the United States subject to sale, settlement, or entry, or that it is of a particular surveyed description, thereby deceiving the person to whom such representation is made, shall be deemed guilty of a misdemeanor and shall be punished by a fine of not exceeding $300 or by imprisonment for a term not exceeding one year, or by both such fine and imprisonment." 39 Stat. p. 936 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10226a).

[1] From the beginning of the government the United States owned large bodies of lands throughout the several states, and Con-

gress has passed numerous laws dealing therewith, providing the means by which the people of the country might obtain title thereto by homestead entry and otherwise. I take it that no one will dispute that it has full power to provide the terms and conditions upon which the said lands may be acquired, and to punish those committing acts calculated to seriously impede or interfere with those conditions and regulations, to the end that the same shall pass to the citizens with the least expense and in such manner as will redound to the mutual benefit of the government and those who acquire or desire to acquire them. Constitution, art. 4, § 3, par. 2; U. S. v. Gratiot et al., 14 Pet. 526, 10 L. Ed. 573; Utah Power & Light Co. v. U. S., 37 S. Ct. 387, 243 U. S. 389, 61 L. Ed 791; Camfield v. U. S., 17 S. Ct. 864, 167 U. S. 518, 42 L. Ed. 260.

[2] As a rule, these lands have either been conveyed to the states as such, or to the citizens thereof, for very small or nominal consideration, with the view of encouraging their development and the settlement of the country. It is a matter of common knowledge that, whenever such tracts have been opened to entry, there has been a rush and scramble on the part of the people to be the first to avail themselves of the opportunity to obtain them, and Congress, taking cognizance of this readiness and eagerness of the public to become the owners, together with the great possibilities for fraudulent representation in regard thereto, has sought in the act now under consideration to safeguard and protect those who would be purchasers from the schemes of those disposed to prey upon this natural desire of the human family to get something cheaply. It seems to me that such a law is as much calculated to produce a fair, just, and orderly disposition and administration of the public lands as one which would punish the making of a false oath as to the actual occupancy of such property as the basis of perfecting title thereto; the end to be accomplished being that only bona fide applications shall be made for entry or purchase of the government lands, and that the faith of the public in the government and its purpose to grant to its citizens who desire to become bona fide owners and developers thereof, may not be destroyed or impaired by designing persons.

Counsel has submitted an able brief, citing numerous authorities upon the power of Congress to regulate the internal affairs of the states; but I cannot see that any of them support the contention made in this instance.

[3] As heretofore stated, the object and purpose of the statute in this case is to insure a proper administration and disposition of the public lands of the government, and any measure reasonably calculated to produce that result I think would fall within the power of Congress, as pertinent and germane to its right to deal with the common property of the nation.

For the reasons assigned, the pleas are overruled.