PACIFIC GAS & ELECTRIC CO. v. UNITED STATES.

No. 6170.

Circuit Court of Appeals, Ninth Circuit.

Dec. 6, 1930.

Wm. B. Bosley and Thos. J. Straub, both of San Francisco, Cal., and W. H. Hatfield, of Sacramento, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., of San Francisco, Cal., and Albert E. Sheets, of Sacramento, Cal. (H. P. Dechant, Asst. to Sol. U. S. Department of Agriculture, of San Francisco, Cal., of counsel), for the United States.

Before RUDKIN and WILBUR, Circuit Judges, and KERRIGAN, District Judge.

WILBUR, Circuit Judge.

This action was brought by the government of the United States to recover $19,-861.65 as damages for trespass upon its land described in the complaint by the appellant in the construction and maintenance thereon of certain ditches for the diversion of water. The appellant answered the complaint admitting the amount of damage but setting up its claim to the right of way for the ditches and canals in question. It predicated its right to a canal known as the Miocene Canal in Butte county upon the use thereof continuously from and after the 1st day of January, 1884. It is alleged that this canal is used as a means of diverting and appropriating waters from the North fork of the Feather river, a nonnavigable stream, on public lands of the United States in Butte county, Cal., and of conveying such water for distribution and sale for mining, manufacturing, agricultural, domestic and municipal use. It bases its right so to do upon section 2339, U. S. Rev. St., enacted in 1866 (14 Stat. 251 [43 USCA § 661]). This section recognizes the appropriation and use of water upon public lands in accordance with "local customs, laws and decisions of courts," and grants the right of way for construction of ditches and canals for the purposes therein specified.

The appellant also sets up its rights to a canal known as the Lower Standard Canal, which was constructed in 1874 and has ever since been used for the diversion from the North fork of the Mokelumne river for mining, manufacturing, agricultural, domestic, and municipal uses. Appellant also sets up a right to the Upper Standard Canal, which was located in the year 1900 and work thereon was commenced in that year and completed in 1902 for the diversion of water from the North fork of the Mokelumne river for similar purposes.

The amount of water running through said ditches across the government land is not increased from the time of the original appropriation, but in the years 1905, 1906, and 1907 appellant's predecessor constructed a hydro-electric power plant upon its own land and upon completion thereof and ever since has used the water conveyed in the ditches across the lands of the government for the development of hydro-electric power. Thereafter the water was distributed and sold as theretofore. A hydro-electric power plant was put in operation by the appellant on May 1, 1902. This plant was operated by water flowing through the Lower Standard Canal and the Upper Standard Canal. Thereafter the water was used for the purposes for which it was originally appropriated.

A demurrer, which was sustained by the trial court, was interposed by the appellee to the answer of the appellant, and judgment entered in favor of the appellee for the amount demanded in the complaint.

On May 14, 1896, Congress passed an act (29 Stat. 120 [43 USCA § 957]) whereby the Secretary of the Interior was authorized to grant rights of way "for the purposes of generating, manufacturing, or distributing electric power." The appellant did not comply with the Act of May 14, 1896, nor with the later Act of February 15, 1901 (31 Stat. 790 [43 USCA § 959]), authorizing permits for rights of way "for electrical plants, poles, and lines for the generation and distribution of electrical power, and for telephone and telegraph purposes, and for canals, ditches, pipes and pipe lines, flumes, tunnels, or other water conduits, and for water plants, dams, and reservoirs, used to promote irrigation or mining or quarrying," etc.

Appellant concedes that if we follow the decision of the Supreme Court in Utah Power & Light Co. v. U. S., 243 U. S. 389, 37 S. Ct. 387, 61 L. Ed. 791, that it cannot establish its right to maintain the Upper Stand-

ard Canal, which was completed after the enactment of the laws of May 14, 1896, and February 15, 1901. In this court that decision determines the right of the appellant so far as the Upper Standard Canal is concerned.

As to the Miocene Canal and the Lower Standard Canal, which were completed and in use long before the enactment of the law of May 14, 1896, with reference to the use of such rights of way in connection with electrical development, appellee claims that although the ditches across its land, and the quantity of water flowing therein, has not been increased or in any wise altered, in connection with the use of the water after it has flowed across the appellee's land and has reached the power plant of the appellant erected upon its own land, below the government land, that nevertheless as the use of water for the development of electricity was unknown at the time of the passage of the law of 1866 granting rights of way, etc., such use could not have been in contemplation of Congress in making such grant, that therefore the use of such water after it has flowed across the government land, for this new purpose, in effect charged the government land with an additional servitude not contemplated by the act of 1866. This would involve placing the narrowest possible construction upon an act of Congress couched in the broadest terms and calculated to meet difficulties of all sorts which had arisen by reason of the appropriation and use of water upon government lands and the diversion thereof by means of canals and ditches for various purposes, including the generation of power. The law of 1866 recognized the right to use water for manufacturing purposes, and this clearly implied its use for the generation of power for moving machinery in such manufacture. In so far as the electricity generated at the hydro-electric power plant is utilized for operating machinery in manufacturing plants, we have an obvious case of the use of water for manufacturing purposes, that is to say, the fall of the water, or the head, actually operates the machines in the various manufacturing plants to which the electricity is conducted as though the plants were situated on the bank of the stream and operated by mechanical connection with the water wheel. Where such power is used for lighting and for the operation of street cars or other electrical apparatus, the electricity is not used in the strict sense for manufacturing purposes, but we think a reasonable construction of the language used in the act of 1866 would recognize the generation of electricity as the manufacturing of electricity. The fact that at the time the law of 1866 was enacted the generation of electricity by hydro-electric power was unknown is no more material than would be the fact that water power is used for manufacturing automobiles or radio machines, which were also unknown at the time the act was passed. To narrowly construe the language of the statute enacted in 1866 granting rights of way would be to defeat the intent of Congress in the enactment of the law. In a number of cases the use of water for generating electric power has been held to be a use of water for "manufacturing." Thompson Co. v. Pennebaker (C. C. A.) 173 F. 849; Mentone Irrigation Co. v. Redlands Elec. Light & Power Co., 155 Cal. 323, 100 P. 1082, 22 L. R. A. (N. S.) 382, 17 Ann. Cas. 1222; Schwab v. Beam (C. C.) 86 F. 41, 43; Lamborn v. Bell, 18 Colo. 346, 32 P. 989, 20 L. R. A. 241; Cascade Town Co. v. Empire Water & Power Co. (C. C.) 181 F. 1011, Id., (C. C. A.) 205 F. 123. None of these cases construes the word "manufacturing" as contained in the act of Congress of 1866 (14 Stat. 251, supra), but the Supreme Court in Utah Power & Light Co. v. U. S., supra, assumes in its decision, without deciding, that previous to May 14, 1896, the right to use water for manufacturing purposes and to convey the water through canals across public lands was authorized by the law of 1866.

For the foregoing reasons we conclude that the appellant was not guilty of trespass upon the appellee's lands by reason of the fact that it used the water flowing across its land for the generation of electric power after it had reached appellant's own land below that of the appellant where it had acquired the right to construct the canals for the purpose of diverting water before the enactment by Congress of the law of May 14, 1896, regulating the method of securing rights of way to be used in connection with the generating of electric power. It follows that as to the Miocene Canal and the Lower Standard Canal described in the appellant's answer it had the right to maintain and use the same for the purposes it had used them for.

As to the Upper Standard Canal the appellee was entitled to recover the reasonable value of the use and occupation of such canals and the judgment to that extent was correct. Utah Power & Light Co. v. U. S., supra. The damages awarded to the appellee

for the use and occupation of the canals and ditches mentioned are not segregated, a lump sum having been awarded to plaintiff as prayed. The pleadings do not give any basis for the segregation of the amount of damages. It will be necessary therefore to vacate the judgment and remand the case to the trial court for the ascertainment of the damage for the use and occupation of the appellee's land by the Upper Standard Canal, unless within thirty days the parties enter into a stipulation segregating the damages so that the trial court can be directed to enter a judgment in the amount suffered by the appellee by reason of the maintenance of the Upper Standard Canal.