UNITED STATES of America, Plaintiff,

v.

**161 ACRES OF LAND, MORE OR LESS, Situate IN GRAND COUNTY, COLORADO, et al., Defendants.**

Civ. A. No. C–5007.

United States District Court,
D. Colorado.

Jan. 4, 1977.

B. Richard Taylor, Trial Atty., Dept. of Justice, Denver, Colo., for plaintiff.

Gorsuch, Kirgis, Campbell, Walker & Grover by Joseph M. Montano, Denver, Colo., for defendants.

## MEMORANDUM OPINION

WINNER, Chief Judge.

In this eminent domain case the parties and the court face a difficult valuation problem, and it is essential that I rule on it in advance of trial. That I do by this opinion, and the brevity of the opinion is made possible only because of the outstandingly fine briefs filed by both counsel.

The land which is the subject of the condemnation is a 161 acre landlocked tract surrounded by Rocky Mountain National Park. Its owners have cherished it as a wilderness area, and access was by means of a 1.8 mile foot and horse trail leading from State Highway 34.[1] The problem is whether the 161 acres should be valued as having only trail access or whether it should be valued under a concept of added value due to possible or probable future improvement of the type of access.

To start at the beginning, the State of Colorado copied Article II, Sec. 14 of its Constitution from the State of Missouri, and broad rights of condemnation for private rights of way exist under Colorado law. *Crystal Park Co. v. Morton*, (1915) 27 Colo.App. 74, 146 P. 566. If the lands surrounding the 161 acres in question were

---

1. The briefs pose the question of whether the access to be considered is the 1.8 mile trail from Highway 34 or whether it is a more distant trail access which existed prior to the construction of Highway 34. I do not decide that question in this opinion, and I assume that 1.8 miles of trail is the test.

owned by a private citizen, the owner could condemn an improved right of way under Colorado law. Unfortunately for the owner, the surrounding lands are not owned privately, and the State of Colorado can create no right to condemn federally owned lands. *Constitution of the United States,* Art. IV, Sec. 3; *Utah Power & Light Co. v. United States,* (1917) 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791; *Transwestern Pipeline Co. v. Kerr-McGee,* (1974) 10 Cir., 492 F.2d 878. Although 43 U.S.C. § 936 grants some rights of condemnation to certain subordinate governments, no federal statute says a private citizen can condemn against the United States. I suppose that when jurisdiction over Rocky Mountain National Park was ceded to the federal government, rights of private condemnation could have been reserved, but they weren't. C.R.S. 1973 § 3–1–130. Moreover, although it is so unlikely that it almost defies imagination, it is possible that a permit could be obtained from the Park Service for the construction of a road across Rocky Mountain National Park to reach this 161 acres, but that permit wouldn't grant any interest at all to the permittee. 43 C.F.R. § 2801; *United States v. Fuller,* (1973) 409 U.S. 488, 93 S.Ct. 801, 35 L.Ed.2d 16.

■ Defendant argues she has a common law right to a way of necessity, but, assuming that defendant has such a right, no case has been cited which holds that a way of necessity across government lands which has satisfied the wants of the owner over the years is subject to expansion for valuation purposes when the government condemns the land. That argument just won't jell. Sometimes we confront a similar question when owners claim that lands which are the subject of condemnation should be valued under zoning differing from the actual zoning of the condemned property. As a generalization, when the owner takes this position, it must be shown that there is a reasonable probability of a change in zoning, and the value added to the land by this probability of change can be taken into account. Perhaps a similar approach could be taken to the present problem, but I suspect that it will be impossible to show by

a qualified witness that there is even a possibility—let alone a probability—that the Park Service will permit the construction of an automobile road across the 1.8 miles lying between Highway 34 and the 161 acres. Defendant argues that 43 U.S.C. § 932 permits this valuation method. I disagree. At best, the statute permits construction of public highways by a government body. It does not authorize private rights of way. Moreover, the statute applies to unreserved lands, and Rocky Mountain National Park doesn't fit that description, because it is devoted to a present public use. I cannot buy defendant's argument that the footpath/horsetrail which was in existence before jurisdiction over the Park was ceded to the United States was a highway within the meaning of any statute.

■ I think that the 161 acres must be valued with the access it had at the time of taking, plus the added value [if any], resulting from the probability of obtaining a permit from the Park Service to build a road. In arriving at this "plus" [if any] the cost of obtaining or trying to obtain the permit would have to be taken into account, and the uncertainty of the life of the permit under *United States v. Fuller* principles would be a negative factor.

Since a permit from the federal government would be required, I think that a NEPA statement is probably required. See, *Upper Pecos Association v. Stans,* (1971) 10 Cir., 452 F.2d 1233, and the value depressant of the likely cost of a NEPA study would be something any informed purchaser would have to think about.

When faced with problems of change in zoning, those questions are usually resolved by the jury on the basis of expert testimony, and I think that the same general approach should be used in passing on the value aspects of the access and NEPA questions outlined above. The jury would determine the final value based on that type of expert testimony and under instructions which would incorporate the views I have expressed herein as to the law which should govern.