## UNITED STATES v. GARAVENTA LAND & LIVESTOCK CO. et al.

### No. 9950.

Circuit Court of Appeals, Ninth Circuit.

July 6, 1942.

Norman M. Littell, Asst. Atty. Gen., Norman MacDonald and Charles R. Denny, Attys., Department of Justice, both of Washington, D. C., and Miles N. Pike, U. S. Atty., of Reno, Nev., for appellant.

William M. Kearney, Douglas A. Busey, and Robert Taylor Adams, all of Reno, Nev., for appellees.

Before MATHEWS, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

The United States has appealed from an adverse judgment in an action brought by it to recover possession of certain lands.

In 1861, the lands in question were settled upon and occupied by the predecessors in interest of appellee. The boundaries of Pyramid Lake Indian Reservation, established by an executive order of March 23, 1874, included the lands in question, but they have never been occupied, since settled upon by appellee's predecessors, by any of the Indians for whom the reservation was established.

The Act of June 7, 1924, Ch. 311, 43 Stat. 596, 25 U.S.C.A. § 421 note, was an act entitled "An act for the relief of settlers and town-site occupants of certain lands in the Pyramid Lake Indian Reservation, Nevada". Section 1 of that act authorized the Secretary of the Interior "* * * to sell to settlers or their transferees, under such terms, conditions, and price per acre as the said Secretary may prescribe, any lands in the Pyramid Lake Indian Reservation, in the State of Nevada, that have been settled upon, occupied, and improved by said settlers and their transferees in good faith for a period of twenty-one years or

more immediately preceding the passage of this Act * * * Provided further, That said sales shall be by private cash entry * * *."

Section 4 provided: "All sales in accordance with section 1 of this Act shall be made through the local land office within ninety days after the price of the land shall have been fixed by the Secretary of the Interior: Provided, That where entry is not made within the time specified, the United States shall enter upon the premises and take possession thereof for the use and benefit of the Piute Indians of the Pyramid Lake Indian Reservation."

The act contained no provision for repossession of the lands by the United States in the event of default in payment of part of the purchase price. It contained no provision expressly authorizing installment payments on the purchase price.

On March 3, 1925 the price of appellee's land was fixed by the Secretary of the Interior. The amount required to be paid by appellee was $7,395.70. At the same time, the Secretary stated that the "claimants of the lands listed will be allowed 90 days from February 7, 1925 * * * within which to pay the appraised price of the land * * *." On May 1, 1925, the Secretary, by telegram, authorized the claimants to either pay cash in full or one-fourth down and the balance in three equal installments with interest on the deferred payments at the rate of 5% per annum.

Appellee made application to purchase the lands in question on May 7, 1925, and paid $1,853.92, its application stating: "The prices to be paid for the said land are governed by the notice of March 3, 1925 and local Land Office notice dated May 1, 1925 under the same heading, or in the event any changes are made in the ruling of March 3, 1925 reducing the prices to be paid for the said land or the terms of payment the undersigned desires and requests the benefit thereof."

The application was allowed on September 16, 1925, but no further sum has been paid by appellee on the purchase price.

On September 26, 1931 the register of the proper land office was directed to notify appellee that it was allowed 90 days from receipt of notice within which to pay the balance of $5,541.78 principal with interest "or to appeal to the Secretary of the Interior failing in which the purchase, which is hereby held for cancellation will

be finally canceled without further notice". Prior to the expiration of the 90 days, the decision was revoked and the register was directed to notify appellee that an extension of 30 days' time had been granted it to pay "one-third of the deferred payments, together with one-third of the accrued interest, the balance to be paid in two equal installments, with interest, in one and two years from the extension period". The register was further directed to notify appellee "that if the first amount is not paid on or before January 31, 1932, or an appeal filed the purchase, which is hereby held for cancellation will be cancelled, the money heretofore paid forfeited and the case closed without further notice".

On April 12, 1935, the register was directed to notify appellee that the purchase price of the land was reduced to $4,005.70, and the interest rate reduced to 4%, that appellee would be allowed 30 days from receipt of notice to pay the balance owing or the interest to December 31, 1934 only, and that unless either of such payments were made, or an appeal was taken to the Secretary of the Interior, appellee's entry would be canceled, its payment forfeited and the case closed without further notice. Appellee appealed to the Secretary of Interior on July 15, 1935, who held on November 25, 1935, that all interest due must be paid within 30 days after notice, that one-third of the unpaid principal now outstanding must be paid by August 27, 1936; that the unpaid principal would be computed on the basis of the reduced price above mentioned; and that interest would be computed from the date of default. Accordingly, the register was directed to notify appellee that $701.09 interest due as of March 31, 1936 must be paid within 30 days after notice, and if not so paid, the entry would be canceled without further notice.

Appellee made no response to any of the notices, and on May 13, 1936, the Commissioner of the General Land Office wrote the register that appellee's entry was thereby canceled. Notice of cancellation was given appellee, and on June 2, 1936, appellee was notified to vacate the lands in question on or before September 30, 1936.

Appellee failed to comply with the notice, and this action was filed on February 4, 1938. The complaint alleged that appellant, at all times since 1848, has been the owner and entitled to possession of the lands in question; that appellee's application to purchase such lands, pursuant to the Act of

418

June 7, 1924, was accepted, but that appellee failed to make the required payments; and that appellee's entry had been canceled, and possession of the lands demanded on behalf of the proper tribe of Indians. Recovery of possession of the lands in question and for the issuance of all necessary writs to accomplish such object, were prayed for.

The answer contained denials and two affirmative defenses. In the first affirmative defense, appellee alleged that the lands had been occupied by it and its predecessors for more than 70 years, had been extensively improved, and by reason thereof it would be unjust and unconscionable to eject appellee from the premises. The second affirmative defense alleged that appellee had tendered payment of the purchase price which had been refused and that at all times it had kept the tender good and did then offer to pay the purchase price in full.

The trial court found that tender of the purchase price by appellee was not made until after it had received notice of cancellation of its entry. It found other facts unnecessary to relate, and concluded "that it would be inequitable and unjust to require or permit the cancellation of such contract of sale or to disturb [appellee's] possession of said lands". Dismissal of the complaint followed, and the United States appealed.

Appellee argues that the Act of June 7, 1924, did not authorize cancellation of any entry made thereunder, and the power to cancel cannot be implied from the act; that upon making the first payment, appellee acquired an equitable title; and that the contract of sale must be treated the same as any contract of sale between private parties, the implication being that appellee's rights could be terminated only by a proper proceeding in court.

■ We believe these contentions cannot prevail. The Act of June 7, 1924 authorized the Secretary of the Interior to sell the lands in question "under such terms, conditions, and price per acre as the said Secretary may prescribe". Thus Congress authorized the Secretary of the Interior to fix the time for payment and to impose the condition which would obtain on default by appellee. The Secretary fixed the price, the time of payment and the result obtaining upon default by appellee, and in doing so exercised the authority granted by the statute. As in other cases, appellee could acquire a title sufficient to prevail over appellant here only upon payment of the purchase price. Frisbie v. Whitney, 76 U.S. 187, 9 Wall. 187, 194, 19 L.Ed. 668. Until that event occurs, and as against appellant, appellee does not have the right of possession.

■ Considerable argument is made to the effect that by reason of long occupancy of the lands in question by appellee and its predecessors, extensive improvement thereof, part payment therefor, and the obvious purpose of Congress to permit the settler or his successor to obtain title to the lands, appellee has acquired an equitable interest in the lands. While these considerations might be important as between appellee and third persons, they have little weight in this controversy between appellee and appellant. See Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791.

■ The settler knew or should have known, when settlement and improvement was made, that he could acquire title to the lands as against appellant, only by legislative grace. Any improvement of the lands after reservation by appellant, was made at the settler's risk. With respect to the part payment, and the indicated purpose of Congress to enable the settler to acquire the lands, it must be pointed out that appellee has had nearly seventeen years to fulfill the conditions required of him. Rather than to meet those conditions, appellee has consistently tried to have the price reduced and the time extended. If appellant had any duty with respect to liberality toward the settlers, the duty has been fulfilled by nearly seventeen years of indulgence.

■ When appellee made its part payment, it knew that the Secretary had not then fixed the terms and conditions controlling on its default. It would appear to be a reasonable rule that the Secretary might thereafter fix, as he did fix, such terms and conditions. Certainly it seems unreasonable to say that because the Secretary did not fix such terms and conditions at one time, he is forever barred from performing the duty required of him by statute. However that may be, the Secretary did fix a reduced price, the benefit of which is here claimed by appellee, and prescribed the applicable conditions upon default by appellee. Appellee will not be heard to say that it can insist on one condi-

tion, i.e., the reduced price, but can reject all others.

We hold that appellee has failed to show a right of possession superior to that of appellant.

The judgment is reversed and the cause is remanded to the court below with instructions to enter the judgment prayed for by appellant.

HEALY, Circuit Judge (dissenting).

The special act passed for the relief of this small group of settlers is evidence of the Congressional belief that there were substantial equities in their situation.

Pursuant to the Act the Secretary, in 1925, prescribed the terms of sale and accepted appellees' application to purchase the land they occupied, together with their down payment of $1,853 on the total price of $7,395. Afterwards there were a number of extensions, and the purchase price was reduced to $4,005. In the period of 11 years following the original purchase numerous defaults occurred of which no advantage was taken. The land became subject to a mortgage, and appellees had tried unsuccessfully to raise the balance owing. Subsequent to the Secretary's notice of forfeiture in 1936, it appears that appellees were able to secure from their mortgagee the sum necessary to complete the payment, and they thereupon made a tender of the balance with the accrued interest. This tender has been kept good. In their answer to the complaint of the Government, appellees alleged the making of the tender and its refusal and stated their readiness and ability to pay the balance in full.

On these facts it is conceded that as between an ordinary vendor and vendee a forfeiture would not be decreed in equity. Mosso v. Lee, 53 Nev. 176, 295 P. 776; Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 2, § 445, p. 301 et seq. The naked circumstance that the United States is the vendor is not an adequate reason for proceeding otherwise.

Equitable principles will not, of course, be applied to frustrate the purpose of a law of the United States or to circumvent public policy. Pan-American Petroleum Company v. United States, 273 U.S. 456, 506, 47 S.Ct. 416, 71 L.Ed. 734; Causey v. United States, 240 U.S. 399, 402, 36 S.Ct. 365, 60 L.Ed. 711; Heckman v. United States, 224 U.S. 413, 446, 32 S.Ct. 424, 56 L.Ed. 820; United States v. Trinidad Coal and Coking Company, 137 U.S. 160, 170, 11 S.Ct. 57, 34 L.Ed. 640. But it is well settled that general principles of equity will ordinarily govern in suits by the United States to secure the cancellation of a conveyance or the rescission of a contract. Pan-American Petroleum Company v. United States, supra, 273 U.S. page 506, 47 S.Ct. 416, 71 L.Ed. 734; United States v. Detroit Timber and Lumber Company, 200 U.S. 321, 339, 26 S.Ct. 282, 50 L.Ed. 499; United States v. Stinson, 197 U.S. 200, 204, 25 S.Ct. 426, 49 L.Ed. 724.

I am not able to see how the denial of the forfeiture in the circumstances here would tend to frustrate the policy of the law. The very purpose of the special act was to make it possible for appellees and others in like situation to acquire title to the lands which they and their predecessors had improved and had so long occupied. Acceptance of the tendered balance with accrued interest in full will make the vendor whole; and it is not claimed that the Government would suffer prejudice in such event because of the default on the basis of which the forfeiture was declared.

The case should be returned to the trial court, with directions to enter judgment for the Government unless the balance of the principal with accrued interest be paid within thirty days. In the event of such payment the dismissal should stand.