**UNITED STATES v. DEPAOLI et al.**

No. 2744.

District Court, D. Nevada.

Nov. 23, 1942.

Thomas O. Craven, U. S. Atty., of Reno, Nev., for plaintiff.

William M. Kearney, of Reno, Nev., for defendant.

NORCROSS, District Judge.

This is a suit brought by plaintiff praying for judgment for the recovery of the possession of certain lands comprising 415.35 acres, situate in Townships 21 and 27, M. D. B. & M, and within the exterior boundaries of Pyramid Lake Indian Reservation in Washoe County Nevada. It is one of six cases which were consolidated for trial. Because of a quite general similarity of facts, decision was rendered in but one of the cases, United States v. Garaventa Land Livestock Co., D.C., 38 F. Supp. 191, the other five remaining under submission pending appeal in the case decided. Appeal was taken and the judgment of this Court reversed with instructions to enter the judgment prayed for by appellant, United States v. Garaventa L. & L. Co., 9 Cir., 129 F.2d 416. Following the de-

cision of the Circuit Court of Appeals judgment was entered for the plaintiff, as directed in that case, also, in four of the other pending cases. Judgment was not entered for plaintiff in the instant case, because of certain facts respecting the same, which, upon further consideration, might be deemed to distinguish this case from the others.

The answer in this case alleges that the defendant, M. P. Depaoli, paid the appraised purchase price, $6,068.03, in full together with accrued interest amounting, in the aggregate, to the sum of $7,631.44, "which said money reached the Treasury of the United States of America and was credited as provided by the said Act of June 7, 1924. * * * and has fully paid for the said lands * * *." Upon the trial the defendant, M. P. Depaoli, testified to making the last payment in the amount of $5,116.62 to the Registrar of the United States Land Office on August 11, 1936. This is the only one of the said six cases in which payment in full was made prior to institution of the several suits on or about February 4, 1938.

While the complaint alleges: "That the plaintiff at all times herein mentioned, and ever since the year 1848, has been, and now is, the legal owner, and is now entitled to the possession of the following described lands * * *" (lands in controversy), the ownership of the lands generally within the Pyramid Lake Indian Reservation became vested in the Piute Indians upon the proclamation of President Grant officially establishing the Reservation, March 23, 1874, subject to the control and guardianship of the United States Government; the Indians of the Piute Tribe occupying the Reservation being deemed wards of the Federal Government. Chippewa Indians v. United States, 301 U.S. 358, 375, 57 S.Ct. 826, 81 L.Ed. 1156; Handbook of Federal Indian Law (Tribal Lands) 94.

The Act of Congress of 1862, 12 Stat. 489, making provision for the construction of the Union and Central Pacific Railroads made provision for certain land grants to the corporations constructing the same. The line of the Central Pacific Railroad crossed the southern portion of the Reservation as later finally established and the Town of Wadsworth, one of its division points, was within the exterior boundaries thereof. The Enabling Act of the State of Nevada, which became effective October 31, 1864, granted the State the 16th and 36th sections of every township. The said Act of Congress of June 7, 1924, 43 Stats. 596, 25 U.S.C.A. § 421, note also, confirmed the said State and Railroad land grants within the boundaries of the Pyramid Lake Reservation and rights to lands of the town-site occupants of Wadsworth. These facts merely illustrate the right of the United States Government in dealing with lands owned and possessed by its Indian wards, to exercise the power of transferring title thereto when a proper occasion therefor has been deemed to arise. This, therefore, is not a case involving a sale of land forming a part of the public domain or any land, the title to which, is vested in the United States.

The said Act of June 7, 1924, authorized the Secretary of the Interior "to sell to settlers or their transferees. * * * All sales * * * shall be made through the local land office within ninety days after the price of the land shall have been fixed. * * * Provided further, That said sales shall be by private cash entry. * * * Provided, That where entry is not made within the time specified, the United States shall enter upon the premises and take possession thereof for the use and benefit of the Piute Indians of the Pyramid Lake Indian Reservation."

In March of 1925, the Secretary of the Interior promulgated certain regulations respecting the "terms, conditions, and price per acre" and the time of payment therefor. These regulations were modified from time to time over a period of years, reducing the price per acre of the various grades of lands, and changing the time and manner of making payment therefor from one total payment at a specified time to payments in full or in four equal installments with interest accruing after June, 1925. Defendant in this case paid the first installment at the time specified therefor in the year 1925. Each of the said settlers, including defendant Depaoli, deposited with the local Federal Land Office the required first payment within the time prescribed and each were then given a serial entry number, that of defendant Depaoli being 015163. Extensions of time were granted for payments of installments and interest.

On May 13, 1936, letters were mailed from the General Land Office in Washington to the Registrar of the Nevada District Land Office, referring to letters of date

February 27, 1936, wherein the Registrar was instructed to allow the entrymen 30 days from receipt of letters within which to make payment of interest due on their respective entries in accordance with Departmental decisions dated November 25, 1935, and that if payments were not so made the entries would be cancelled, also, letters of the Registrar that letters so advising entrymen were sent by registered mail to the entrymen on March 10, 1936, and that payments not having been made excepting by one of the entrymen, that "Therefore, since the entrymen holding entries 015159, * * *, and 015163 failed to pay the interest required, those entries are hereby cancelled and the cases closed * * *." On May 18, 1936, cancellation notices were mailed to each of said entrymen.

On August 11, 1936, defendant herein paid to the Registrar of the Carson City Land Office the amount of $5,116.62, the balance of the amount of the purchase price as fixed, together with accrued interest thereon to that date. The amount was received by the Registrar of the Land Office at Carson City and forwarded to the Commissioner of the United States Land Office at Washington, D. C. A registered letter of date April 17, 1939, was received by defendant Depaoli from the Federal Reserve Bank in San Francisco enclosing a Government check for the said amount by him so paid to the said Registrar, which check was by him returned by registered mail and return registry card received of date May 15, 1939. It thus appears that while there was a delay in making the interest payment of approximately four months, payment not only of such interest but the balance of the purchase price was made and thereafter retained without question for nearly a year and six months before this suit was instituted and two years and eight months before return thereof was tendered which tender was declined and returned.

 As heretofore stated, the said Act of June 7, 1924, authorized a sale of the lands occupied by the original settlers or their transferees, "said sales shall be by private cash entry * * * that where entry is not made within the time specified, the United States shall enter upon the premises and take possession thereof for the use and benefit of the Piute Indians * * *." The Act provides for a sale of lands which in legal effect were in private ownership, the record title thereto being held in trust only by the United States as guardian of its wards. While it is provided that sales are to be effected "by private cash entry" through a Federal Land Office, such authorized contract sale is made. As the Act provided for payments to be made through the Federal Land Office it is manifest that no final deed or instrument showing full compliance with the terms of sale would or could issue until full payment was made. Here an entry was made within the time specified. Therefore, it does not follow that because some other payment was not made in time that "the United States shall enter upon the premises and take possession thereof for the use and benefit of the Piute Indians." As in any contract or agreement of sale between an ordinary vendor and vendee, where an initial payment has been made, according to the terms thereof, the owner or the guardian thereof, as the case may be, may bring appropriate proceedings to recover possession in the case of default in any future or final payment. Whether recovery may be had where a sufficient tender of payment is made by the vendee is usually governed by equitable principles. No serious question has been raised in this case, that the Act in question was not a recognition of the equities of a settler who, together with predecessor grantors, had occupied the premises continuously from a time when the land was open unsurveyed public domain and preceding the time when it became, in fact, an established Indian Reservation. There is no provision in the statute expressly authorizing a mere cancellation of an entry duly made and the rights of a settler to be so terminated including forfeiture of prior payments but assuming a regulation so providing to be valid, the further question is then presented in this case whether a payment in full of the balance of the purchase price with accrued interest, made shortly following the time fixed for cancellation, and its retention thereafter for more than two and a half years before return is tendered does not render ineffectual such cancellation, especially where it further appears from the testimony of the settler that: "I couldn't pay it until I had the money," the time referred to being a time when the farming and live stock industry was continuing in a state of depression which had been the occasion of many bank failures in this State. It appears to be well settled that principles of equity govern in suits by the United States to secure cancellation of a

conveyance or the rescission of a contract. Pan-American Petroleum & Transport Co. v. United States, 273 U.S. 456, 506, 47 S.Ct. 416, 71 L.Ed. 734; United States v. Detroit T. & L. Co., 200 U.S. 321, 339, 26 S.Ct. 282, 50 L.Ed. 499; United States v. Stinson, 197 U.S. 200, 204, 25 S.Ct. 426, .49 L.Ed. 724; Mosso v. Lee, 53 Nev. 176, 295 P. 776; Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 2, § 445, p. 301 et seq. It is the conclusion of the Court that plaintiff is not entitled to recover and that judgment should be for defendant. It is so ordered.