UNITED STATES of America,
Plaintiff,

v.

LAZY F C RANCH, a partnership, and August Martsch, Joseph Martsch, Fred Mayer and Jacob Kerbs, also known as Jake Kerbs, partners, Defendants.

Civ. No. 4022.

United States District Court,
D. Idaho.

April 8, 1971.

Sidney E. Smith, U. S. Atty., Boise, Idaho, for plaintiff.

Lloyd J. Walker, Hepworth, Walker, Nungester & Felton, Twin Falls, Idaho, for defendants.

## MEMORANDUM OF OPINION

FRED M. TAYLOR, District Judge.

The plaintiff, United States of America, brought this action under Title 31, U.S.C. § 231 to recover certain money paid to the named defendants by reason of alleged false claims submitted by the defendants, together with damages and forfeitures as provided by that statute. In the alternative, the government seeks to recover for money erroneously paid to the defendants by mistake of fact or law under Title 28, U.S.C. § 1345, without regard to penalties and forfeitures. Jurisdiction is invoked under 31 U.S.C. § 232 and 28 U.S.C. § 1345, and is not in dispute. Since the commencement of this action in 1964, two of the named individual defendants, Jacob Kerbs and Fred Mayer, have died. By stipulation of the parties and by order of this court, Richard Kerbs, the son and personal representative of Jacob Kerbs, has been substituted as a party defendant for Jacob Kerbs, deceased, and Avanell Mayer, the surviving spouse and successor in interest to Fred Mayer, has been substituted for defendant Fred Mayer, deceased.

The present controversy arises out of certain payments made to the named defendants by the Agricultural Stabilization and Conservation Service (ASCS), an agency of the Department of Agriculture of the United States. The significant facts of the case are not in dispute, and have been stipulated by the parties in the amended pre-trial order filed with the court. These uncontroverted facts reveal that the defendant Lazy F C Ranch was a partnership organized in 1952 for the purpose of acquiring and operating certain agricultural and pasture lands in Cassia County, Idaho. The individually named defendants were, at all times material to this action, part-

ners in the Lazy F C Ranch, in addition to other partners not involved here.

In 1957, several of the partners met with one Marlin Lind, the then manager of the Cassia County office of the ASCS, and with certain members of the county committee of the ASCS, for the purpose of determining the qualification of partnership lands under the Acreage Reserve and Conservation Reserve Programs of the Soil Bank Act, 7 U.S.C. § 1801, et seq. In the course of the meeting, the partners were advised that the Lazy F C Ranch alone would qualify as a producer under the programs, but that the individual partners could qualify and participate in the Soil Bank program by leasing land from the partnership.

Certain partnership lands were then divided into five units, four of which were leased under written lease agreements to the four individual partners. The remaining unit was retained by the partnership. The leases provided that the partnership should retain twenty per cent of the income from the leased lands as rent and that the individual lessees would receive the remaining eighty per cent. The ASCS office manager, Marlin Lind, assisted the partners in designating the areas of the ranch which should be included in the individual units, and furnished the partners with legal descriptions of the units which would qualify under the Soil Bank program. The completed leases were presented to Lind and to the county committee, and on the basis of those leases Acreage Reserve Contracts and Conservation Reserve Contracts were entered into between the individual partners and the United States. The partnership, Lazy F C Ranch, entered into similar contracts with the United States. The parties concede that the contracts as written were fully performed by the parties to the same. The amounts under the contracts were paid by check from the United States to the partnership and to the individual partners. The partners deposited their checks in the partnership account and the funds were at all times used and treated as partnership funds.

The Acreage Reserve Program, together with all contracts entered into under that program, was terminated by the government in 1958. At that time, the partners desired to also terminate the Conservation Reserve Contracts, but were denied permission to do so by the ASCS county committee. The Lazy F C Ranch was sold in its entirety in the fall of 1961, thereby terminating the remaining contracts.

On December 14, 1961, the Idaho State Committee of the ASCS determined that the contracts of the partnership and its members were not in accordance with the applicable regulations, since the Lazy F C Ranch would be, under the regulations, the only eligible producer. The state committee further determined, however, that the partnership and its members had not employed any scheme or fraudulent device to evade the payment limitations imposed by the regulations, and suggested that the partners and the partnership could apply for equitable relief under Section 128 of the Soil Bank Act, 7 U.S.C. § 1816.

Pursuant to a stipulation, the controversy has been submitted to the court for decision on the record. Two primary issues are presented to the court for decision. The first of these is whether the record is sufficient to show a "false claim" by the named defendants within the meaning of 31 U.S.C. § 231. The second major issue is whether the United States is precluded from recovering any money erroneously paid by application of any rule of estoppel against the government or its employees, or by the regulations promulgated by the Secretary of Agriculture to effectuate the Soil Bank Act.

■ In order for a defendant's actions to fall within the purview of the False Claims Act, there must exist an intent on the part of the defendant to deceive by making false or misleading statements or representations. United States v. National Wholesalers, 236 F.2d 944 (9th Cir. 1956), cert. denied, 353 U.S. 930, 77 S.Ct. 719, 1 L.Ed.2d 724 (1957); Woodbury v. United States, 232

F.Supp. 49 (D.Or.1964). The government argues that in this case the partners never intended a bona fide lease and that the leases filed by the partners were nothing more than sham instruments which could have had no purpose other than to deceive the government as to the true status of the partners as eligible producers under the Soil Bank Program. In contesting the bona fides of the leases, the government relies to a considerable extent on the fact that the individual partners promptly turned over to the partnership all payments received and that the funds were in all respects treated as partnership property.

■ The court finds the evidence in the instant case insufficient to support a finding of intent to deceive. The record here clearly indicates that the partners had been led to believe that their actions were permissible under the law, and constituted nothing more than an attempt to comply with government regulations controlling what they believed to be a lawful contract. It is significant that the government's own officials testified that there was no intended deceit on the part of the partners. Moreover, the ASCS state committee, in reviewing the case, expressly found that there was no such intentional deception.

The case of United States v. National Wholesalers, supra, on which the government relies in part, does not compel a different result. In that case, a contract supplier had knowingly supplied substitute products for those specified in its contract with the government, and had attached spurious labels to the substituted products. The contractor thus not only withheld the true facts from the government, but also made an overt and obvious effort to obscure those facts. The record in the present case, on the other hand, is barren of competent evidence to show such an intent to deceive. Indeed, it seems somewhat anomalous to suggest that deception was necessary to accomplish the objective sought by both the partners and the ASCS county office, and by means which the county office not only ap-

proved but also advised. The fact that other governmental officials may have been in fact deceived is not controlling, since the relevant issue here is the intent of the partners. Further, the fact that the partners subsequently turned their contract payments over to the partnership is only one circumstance which would bear on their intent in executing the leases and contracts. In the light of the entire record, that circumstance alone does not support a finding of intended deceit. The court therefore concludes and holds that the evidence is insufficient to bring the present action within the ambit of the False Claims Act, 31 U.S.C. § 231.

The next issue to be resolved is the government's claim that it is entitled to recover under 28 U.S.C. § 1345 for money erroneously paid to the partners and the partnership by reason of mistake of fact or law. In substance, the government contends that the ASCS county committee and the local office manager erred in their interpretation of the applicable regulations in concluding that the individual partners could qualify as producers. The defendants do not dispute that the money was paid or that they were ineligible as producers under the program. The defendants assert, however, that the government is estopped to maintain the action as a matter of equity because of the erroneous advice given by its employees.

■ The government contends that the United States cannot be estopped or bound by the acts of its employees when acting beyond their authority, or when sanctioning, even mistakenly, that which is not permitted by law, citing the leading cases of Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947) and Utah Power and Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917). While most of the cases since the decision in *Utah Power and Light*, supra, have consistently followed the rule of that case, nevertheless there have been numerous cases in which equitable estop-

pel has been allowed against the government in particular situations. Cf. United States v. Fox Lake State Bank, 366 F.2d 962 (7th Cir. 1966), and cases there cited. In the recent case of United States v. Georgia-Pacific Co., 421 F.2d 92 (9th Cir. 1970), the Ninth Circuit thoroughly reviewed the application of equitable estoppel against the government, and noted that the rule announced in *Utah Power and Light Co.* has been slowly eroded by decisions permitting estoppel against the government, particularly where the government is acting in a proprietary rather than a sovereign capacity. It would serve no useful purpose to comprehensively review the authorities collected in the *Georgia-Pacific Co.* decision. It is sufficient to observe that those cases reflect an increasing trend, in light of the "growth of government and its concomitant increase in its functions, powers, and contracts with private parties", 421 F.2d at 100, to hold the government to the same standards of honesty and care in its dealings that would be required of a private individual, where the application of equitable estoppel against the government does not thwart a statutory mandate of Congress or does not unduly restrict administrative implementation of a statutory purpose. In short, the state of the law in this circuit now appears to be that in the absence of some particular sovereign objective necessary to orderly government, and where morals and justice so require, the government may be estopped by the acts of its employees.

The holding in United States v. Georgia-Pacific Co., supra, was recently followed by the Ninth Circuit in Brandt v. Hickel, 427 F.2d 53 (9th Cir. 1970), a case which is similar in many respects to the instant case. In *Brandt*, the appellants had submitted a non-competitive oil and gas lease offer to the Los Angeles office of the Department of Interior. The Los Angeles office, interpreting an Interior Department decision, held the offer defective, but allowed the appellants the right to submit a corrected offer within thirty days and without loss

of the priority of their offer. The appellants, on the basis of that decision, decided to forego an appeal of the decision and, instead, filed an amended offer in the belief that they would retain the priority of their original offer. After protracted administrative proceedings involving a conflicting claim to priority asserted by a third party, the Secretary of the Interior held that by failing to appeal from the original decision and instead filing the amended offer, the appellants had lost their right to assert the validity of the original offer, and further held that the Los Angeles office had been without authority to give any continued priority to the original offer. On appeal following a decision adverse to the appellants in the District Court, the Ninth Circuit, speaking through Chief Judge Chambers, reversed the judgment of the Secretary and the District Court. The Court concluded that the government had, by its erroneous advice, frustrated the appellants' right of appeal from the original decision of the land office, and could not in fairness be heard to assert the failure to appeal as a reason for denying the appellants' offer. While noting that not every form of official misconduct is sufficient to estop the government, the Court observed, 427 F.2d at 56, 57:

"Yet some forms of erroneous advice are so closely connected to the basic fairness of the administrative decision making process that the government

may be estopped from disavowing the misstatement. * * * We conclude that the collateral estoppel doctrine can properly be applied in this situation *where the erroneous advice was in the form of a crucial misstatement in an official decision.*" [Emphasis added.]

■ While past cases have tended to apply the doctrine of estoppel against the government in only those cases in which the government acts in its proprietary capacity rather than in its sovereign or governmental capacity, it is often difficult to determine the precise areas of governmental function encompassed by these categories. In this case, the government was engaged in ordinary contracts with private individuals, and under these circumstances it must submit to the same law which governs private persons in their contractual dealings. United States v. Georgia-Pacific Co., supra; Brandt v. Hickel, supra.

■ Even conceding, arguendo, that the government was engaged in a governmental function in controlling agricultural commodities, the court concludes that the same result must obtain. The court finds that Congress has expressed its consent that the government be estopped by the acts of its agents in situations of this type where justice and equity demand such a result. Title 7, U. S.C. § 1816[1] gives the Secretary the power to authorize payments to a pro-

---

1. 7 U.S.C. § 1816. *Compensation for incorrect information furnished under acreage reserve or conservation reserve program.*— Notwithstanding any other provision of law, the Secretary may, to the extent he deems it desirable in order to provide fair and equitable treatment, pay a producer compensation under the acreage reserve or conservation reserve program which he otherwise would not be entitled to receive because the contract, application therefor, action, or conduct of the producer is—

(1) not in conformity with the provisions of the program, or

(2) less favorable to the producer than would have been the case if it had been based on correct information, or

(3) based on an understanding that payment would be forthcoming in an amount in excess of that permitted by the program

if it is established to the satisfaction of the Secretary that the contract, application, action, or conduct of the producer was the result of relying in good faith on the erroneous approval of such contract, application, action, or conduct by, or on the erroneous advice, determination, or computation of, an authorized representative of the Secretary. No contract heretofore or hereafter entered into shall be modified, invalidated, or changed because of the marriage of any two contracting parties.

ducer in excess of the amount he would ordinarily be entitled to receive under the law, if such action is desirable and necessary to provide fair and equitable treatment. This provision applies where the contract or the producer's actions are not in conformity with the program, or where the producer relied on the erroneous advice of a governmental official, or on the erroneous approval of the contract. The record is undisputed that in the instant case the partners, in executing the leases and contracts, relied on the advice and approval of Marlin Lind and the ASCS county committee.

■ A review of Senate Report No. 745 [2], accompanying this legislation, makes it clear that Congress, in enacting this remedial statute, unquestionably recognized the hardship that might result to producers relying on erroneous advice from government officials. The Senate Report contains numerous examples of hardship cases which had resulted from such erroneous information. The examples were supplied to the Senate Committee by the Department of Agriculture, the very agency which would now deny the defendants the equitable relief contemplated by the statute. It is clear from the Senate Report that Congress and the Senate Committee on Agriculture and Forestry had before them, in considering Section 1816, an example of a situation virtually identical to this case.[3] Considered in the light of this legislative history, Section 1816 consists of nothing less than a Congressional recognition of the applicability of equitable estoppel against the government in cases of precisely this type, and manifests a Congressional intent that the government should do equity in cases where producers have relied to their detriment on misstatements of government agents. It is also clear that the relieving provisions of Section 1816 were in-

tended to apply to excessive payments as well as to inadequate payments.[4]

The result in this case might be somewhat different if the erroneous advice had caused some injury to the government, or had resulted in a windfall for the defendants. Brandt v. Hickel, supra. Here, however, it is clear that the partners, in reliance on their contracts, removed from production more of their farmland than they would have if they had understood the payment limitations applicable to the partnership as the sole eligible producer. Thus the government sustained no injury, since a value was given for the payments received. Nor did the partnership or its partners receive benefits to which they were not justly entitled, since they fully performed their contractual obligations. The court notes that the parties have stipulated that the benefits received by the government were at least equal to the value of the payments made.

The court concludes and holds that the United States is not entitled to recover any of the money paid to the partnership or the partners under the Acreage Reserve and Conservation Reserve contracts here involved, and that this action should be dismissed. In view of the court's decision, it is unnecessary to consider the other defenses raised by the defendants. Further, it is not necessary to consider the merits of the counterclaim. Since the defendants are entitled to retain the payments paid under the contracts, no injury results to them because they refrained from cultivating their land.

This opinion shall constitute the findings of fact and conclusions of law of the court pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. Counsel for the defendants shall prepare a proposed judgment, serve copies of the same on government counsel, and submit the original to the court.

2. Senate Report No. 745, U.S.Code Congr. and Adm. News, 86th Congr., 1st Sess., 1959, p. 2536.

3. Senate Report No. 745, supra, n. 2, Example No. 8.

4. Id., Examples 2, 7, and 8.