547 F.2d 479
 UNITED STATES of America, Plaintiff-Appellant,
v.
31.43 ACRES OF LAND, MORE OR LESS, situate IN WHITMAN
COUNTY, STATE OF WASHINGTON, et al., Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellant,
v.
43.50 ACRES OF LAND, MORE OR LESS, situate IN WHITMAN
COUNTY, WASHINGTON, et al., Defendants-Appellees.
 Nos. 75-1240, 75-1241.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 20, 1976.
 
 Jacques B. Gelin, Atty. (argued), of Lands and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.
 Robert L. Zaeglow (argued), Walla Walla, Wash., for defendants-appellees.
 Before KOELSCH, TRASK and CHOY, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 The United States appeals from a judgment entered on a stipulation establishing the fair market value of real property acquired by the United States for purposes associated with the construction and maintenance of the Lower Granite Lock and Dam on the Snake River. The stipulated judgment reserved the Government's right to appeal to this Court. We reverse and remand for further proceedings.
 
 Background
 
 2
 The facts underlying this appeal are given in the district court opinion denying the Government's motion in limine to restrict the appellee property owners (appellees) from introducing evidence of the "enhanced value" of their property, an issue relevant to the amount of compensation due upon condemnation. United States v. 31.45 Acres of Land, 376 F.Supp. 1277 (E.D.Wash.1974).[1] Unable to appeal from the denial of the motion, the Government secured a stipulated judgment and then perfected this appeal to attack the ruling's substance. This Court's jurisdiction rests on 28 U.S.C. § 1291.
 
 
 3
 In 1966, the Government acquired, through an eminent domain proceeding, a portion of the appellees' property ("1966 property") in connection with the construction and maintenance of the Lower Granite Lock and Dam ("Lower Granite Project") on the Snake River in Whitman County, Washington. The issue of just compensation in this 1966 transaction was settled through compromise and a stipulated judgment was entered. The 1966 property was to be used, in part, for the relocation of a county road and the Camas Prairie Railroad.
 
 
 4
 In 1972, the Government commenced this action to obtain title to additional adjacent lands ("1972 property") owned by appellees for the purpose of accommodating modified plans to relocate the road and railroad bed. In its pretrial motion, the Government sought to limit the valuation of the 1972 property to what it would have been worth had the Lower Granite Project not been in existence, thus eliminating any possible enhancement of value of the land attributable to the project itself.[2] See United States v. Miller, 317 U.S. 369, 376-77, 63 S.Ct. 276, 87 L.Ed. 336 (1943). Appellees contested this motion, also citing Miller, asserting first that the 1972 property was not within the original scope of the Lower Granite Project and thus constituted a "second taking," entitling them to recover the enhanced value of the land rather than its value in the absence of the project. Appellees also contended that, in the course of the negotiations leading to the compromise over the 1966 property, they had been assured by an Army Corps of Engineers land acquisition agent and an Assistant United States Attorney that no further land acquisitions were contemplated and that appellees' remaining lands would enjoy enhanced value. Hence, appellees argue, the United States is thereby equitably estopped from asserting that there had been no change in the congressionally-approved project by deciding to acquire the 1972 property.
 
 
 5
 The district court concluded that the relocations were within the scope of the original project such that there was no second taking, but that the Government was estopped to assert that as a defense to enhanced value evidence because of the alleged misrepresentations of the land agent and Assistant United States Attorney.
 
 Additional Taking
 
 6
 Appellees do not contest the right of the United States to acquire the 1972 property, but rather contend that the additional requirement was a change in the project which, in turn, created the right to have the trier of fact consider evidence going to the enhancement of value imparted by the project.
 
 
 7
 The Supreme Court said in United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943):
 
 
 8
 If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement.
 
 
 9
 The question then is whether the respondents' lands were probably within the scope of the project from the time the Government was committed to it. If they were not, but were merely adjacent lands, the subsequent enlargement of the project to include them ought not to deprive the respondents of the value added in the meantime by the proximity of the improvement. If, on the other hand, they were, the Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The owners ought not to gain by speculating on probable increase in value due to the Government's activities.
 
 
 10
 Id. at 376-77, 63 S.Ct. at 281. See also Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170 (1893). The Court has subsequently held that the determination of whether the subject property was within the original scope of a government project as called for in Miller is a question for the court, not the jury. United States v. Reynolds, 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970).
 
 
 11
 Here, the district judge found that the 1972 property was within the scope of the project.[3]
 
 
 12
 From its inception this project has been essentially the same, it has not been enlarged, and no public information could lead a property owner to believe that any low lying lands along the stretch of the Snake River would not be a probable object of condemnation. The lapse of some four years between "takes", while extensive, is not so long as to lull property owners into a false sense of security when the entire time span of the project is considered.
 
 
 13
 . . . The relocations are only a detail in the project and the present relocations are within the geographic perimeter and scope of the original project. The over-all plan of the development of the lower Snake River has always included a relocation of this road and railroad to raise them above the dam pool, but within the canyon. It cannot be considered as a change in the project when continuing input of engineering data and continuing pressures to accommodate facilities which are obviously appurtenant to the navigational aspects of the project dictate a relocation well within the obvious confines of the project.
 
 
 14
 376 F.Supp. at 1280. We see no error in this finding.
 
 Estoppel
 
 15
 The district court then resolved the estoppel argument against the Government, and we think incorrectly so. The court "broadly" restated the elements of estoppel doctrine in this circuit to be
 
 
 16
 (1) misrepresentation of a (2) material fact by the party against whom estoppel is asserted, (3) which misrepresentation is not known by the party asserting the estoppel to be false and (4) upon which misrepresentation the party relies (5) with the right to rely thereon, resulting in (6) detriment to that party.
 
 
 17
 Id. at 1281, citing United States v. Georgia-Pacific Co., 421 F.2d 92 (9th Cir. 1970), & United States v. Lazy FC Ranch, 324 F.Supp. 698 (D.Idaho 1971), aff'd, 481 F.2d 985 (9th Cir. 1973).[4] The court then found that evidence of representations made during the acquisition of the 1966 property to the effect that remaining lands would have enhanced value and that such representations were relied upon was uncontradicted. The court reasoned that "(c)itizens should be able to rely on statements and actions of government agents." 376 F.Supp. at 1281. Finding that though the land agent's statements would somehow be inherently suspect as to the finality of the 1966 "take line," the court concluded that there "should be no reason for a party to question the authority of the Government's counsel to speak for the Government in a court proceeding under the circumstances as existed in the 1966 settlement." Id.
 
 
 18
 We think that the district court misapplied the doctrine of estoppel. Relying entirely upon the findings of the trial court, we conclude that the Government made no untrue representations based on their knowledge at the time of the 1966 negotiations.[5]
 
 
 19
 Up to 1966, all changes were kept within the "take line" on which these parties dealt in the taking of the 1966 property. Only thereafter, two new factors not chargeable to the Government intervened to cause the relocation of the rights-of-way: state legislative action changing the county road to a state highway and port districts requesting the relocations to permit industrial development at the water's edge. The court found that this shift "contravened the recommendations of the Corps of Engineers and was apparently occasioned by the demands of interested agricultural and port groups as well as intercession by some of the state's Congressional delegation." Id. at 1278 (emphasis added). The court also found that the pressures for these changes were "continuous and highly public." Id. at 1280. Appellees do not contest the factual findings. We do not think these facts fit either the district court's estoppel formulation, id. at 1281, or the parent version quoted in Georgia-Pacific, 421 F.2d at 97.[6]
 
 
 20
 Having found the facts as it did, we think the district court erred in applying the doctrine of estoppel and in not applying the rule of Miller that enhanced value should not be included in compensation upon condemnation of lands within a project's original scope. Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent herewith.
 
 
 21
 Reversed and Remanded.
 
 
 
 [1]
 We have assumed that the two-hundredths acre discrepancy between the parcels involved in No. 75-1241 on appeal and No. 3744 in the district court is without significance
 
 
 [2]
 The intensity of this dispute is traceable to the change in the highest and best use of the land in question before and after the commencement of the Lower Granite Project. Prior to the project's inception, the highest and best use of the land was agricultural, and an appraised agricultural value was $16,450. Appellees claim that the highest and best use in light of the project is industrial and port use with a corresponding value of $148,500. The stipulated judgment entered into with respect to the 1972 property, which set an agreed enhanced value of $107,500, indicated that but for the denial of the Government's motion in limine, both sides would have presented appraisal testimony establishing the respective lower and higher values
 
 
 [3]
 Citing several cases outside our circuit, the district judge noted that the scope determination had theretofore been based on factors such as the definiteness of project boundaries at the time of congressional approval, the time between the two alleged takings, the available public information, and any changes in government policy. 376 F.Supp. at 1279-80
 
 
 [4]
 In Georgia-Pacific, this Court reiterated that
 "(f)our elements must be present to establish the defense of estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. . . ."
 421 F.2d at 96 (citation and footnote omitted), quoting Hampton v. Paramount Pictures Corp., 279 F.2d 100, 104 (9th Cir.), cert. denied, 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960). We also noted in Georgia-Pacific that as against the Government, the defense of estoppel might be available if (1) the Government acted in a proprietary rather than a sovereign capacity, and (2) its representative acted within the scope of his or her authority. 421 F.2d at 100-01. Later cases have indicated a tendency to de-emphasize the sovereign-proprietary distinction, depending upon whether government misconduct threatens to work a serious injustice or whether the public's interest would be unduly damaged. See, e. g., United States v. Lazy FC Ranch, 481 F.2d 985, 989 & n.5 (9th Cir. 1973). Because we hold here that no estoppel lies on the facts, we have no occasion to address the issues of the sovereign-proprietary distinction and representative's authority which would ordinarily be relevant in applying estoppel doctrine to the Government.
 
 
 [5]
 In view of our conclusion on factual grounds that no estoppel lies, we need not resolve at this time whether the test is actual or constructive knowledge. Compare Georgia-Pacific, 421 F.2d at 96 ("(t)he party to be estopped must know the facts") with United States v. Wharton, 514 F.2d 406, 412 (9th Cir. 1975) ("or should have known")
 
 
 [6]
 See note 4 supra. We also note that with respect to the criterion of detrimental reliance, appellees did not rely on the statements of the Assistant United States Attorney as a consideration of the 1966 settlement. Appellees' Brief at 23. Moreover, appellees have not directed our attention to any admissible evidence of firm offers to purchase the subject land between 1966 and 1972. Instead, we find only vague references to "contact(s)" from real estate agents, id. at 24, and "opportunities" to sell. Id. at 33