NORTHERN MARIANA ISLANDS

TRIAL DIVISION

| | |
|---|---|
| ISLAND AVIATION, INC., ) | CIV. ACTION NO. 81-0069 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | MEMORANDUM OPINION |
| ) | |
| MARIANA ISLANDS AIRPORT ) | |
| AUTHORITY, and CARLOS A. ) | |
| SHODA, its Executive ) | |
| Director; and the ) | |
| COMMONWEALTH PORTS AUTHORITY ) | |
| and CARLOS A. SHODA, its ) | |
| Executive Director, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

The Plaintiff filed a Motion For Partial Summary Judgment with this Court on March 22, 1982 seeking to establish liability on the part of the Defendants under 42 U.S.C. § 1983. The Defendants filed a Cross Motion For Summary Judgment with this Court on August 6, 1982, denying liability and alleging that the Defendants are immune from suit under 42 U.S.C. § 1983.

This Court having considered the respective motions filed by the Plaintiff and the Defendants together with the memoranda and oral arguments made in support of and in opposition to such motions granted the Plaintiff's motion and denied the Defendants' motion by order dated and filed September 29, 1982. This Court, however, indicated in its order of September 29, 1982, that a memorandum opinion would be issued thereafter setting forth the reasons underlying the Court's decision. This memorandum opinion, therefore, serves that stated purpose.

## I. FACTS

The material facts giving rise to this action are not disputed by the parties. On May 19, 1981, the Defendant Carlos A. Shoda ("Shoda"), acting in his official capacity as Executive Director of the Defendant Mariana Islands Airport Authority ("MIAA")[1] advised the Plaintiff, Island Aviation, Inc. ("Island") that runway clearance would no longer be granted to the aircraft operated by the Island. Shoda's decision not to permit Island's aircraft to take off from the Saipan International Airport ("Airport") was a result of a dispute that had arisen between Island

- - - - - - - - - -

[1] On October 8, 1981, Governor Carlos S. Camacho signed into law Public Law No. 2-48 creating the Commonwealth Ports Authority ("CPA"),which assumed all rights, obligations and duties of MIAA. Public Law No. 2-48 became effective thirty days after the Governor approved the Act. Defendant Shoda continued as Executive Director of the Authority at all times relevant to this action.

and MIAA relative to certain delinquent airport user fees that had not been paid by Island to MIAA.

On May 19, 1981, Shoda ordered that MIAA vehicles be parked in front of and behind of Island's aircraft that were located on the apron of the airport and thereby prevented Island's aircraft from taking off. Subsequent to the incident on May 19, 1981, Shoda and Island attempted to reach an accord on the disputed fees and the manner in which the fees would be collected. The negotiations between Shoda and Island failed however to produce a mutually acceptable resolution of the controversy concerning the airport user fees.

Thereafter, on October 30, 1981, Shoda again ordered that Island's aircraft be blockaded with CPA vehicles. As a result of this action Island filed the present case on October 30, 1981. In its complaint Island charged that Shoda and CPA did not have the authority to "seize"[2] Island's aircraft in an attempt to compel payment of the disputed airport user fees. Moreover, Island argued that Shoda and MIAA could only compel payment of such fees through judicial action as provided in the enabling legislation which created MIAA together with the rules and regulations promulgated by MIAA. Island sought both injunctive relief and damages for the seizure of its aircraft.

- - - - - - - - - -

[2] Defendants conceded in oral argument that there exists no factual dispute as to the manner in which the aircraft were blockaded and that such blockades effectively prevented the aircraft from taking off from the Airport. Consequently, it is clear that the blockades constituted a seizure.

On November 2, 1981, this Court issued a Temporary Restraining Order which restrained Shoda and MIAA from interfering with Island's use of the Airport.

In their Answer the Defendants argued in relevant part that they were immune from such suit because neither MIAA nor CPA were "persons" within the meaning of 42 U.S.C. § 1983.

On March 22, 1982, the Plaintiff filed a Motion for Partial Summary Judgment on the issue of liability arguing in essence that the Defendants seizure of Island's aircraft amounted to a taking of property without due process of law in violation of 42 U.S.C. § 1983. The issue of damages was reserved for trial.

On August 6, 1982, the Defendants filed a Cross Motion for Partial Summary Judgment claiming that MIAA and CPA are agencies of the Government of the Commonwealth of the Northern Mariana Islands and, as such, are not "persons" suable under 42 U.S.C. § 1983. Moreover, the Defendants argue that Shoda is shielded by common law immunity and qualified immunity.

///
///
///
///
///
///
///
///
///

## II. ISSUES

The facts as presented clearly frame the two critical issues which must be resolved by the Court. The first issue is whether the Defendants' seizure of the Plaintiff's aircraft is actionable pursuant to 42 U.S.C. § 1983. In the event that the first issue is answered in the affirmative, the second concomitant issue is whether the Defendants are immune from liability arising from the illegal seizure of the aircraft pursuant to 42 U.S.C. § 1983.

## III. STANDARD OF REVIEW

In considering Island's motion for partial summary judgment together with the Authority's cross motion for summary judgment the Court must determine whether there exists any genuine issue of material fact. U.S. v. First National Bank, 652 F.2d 882, 887 (9th Cir. 1981) 10 C. Wright & A. Miller, Federal Practice and Procedure, § 2725 at 496 (1973).

Summary judgment is proper if, when viewing the evidence in the light most favorable to the party opposing the motion, the movant is clearly entitled to judgment as a matter of law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Radobenko v. Automated Equipment Corp., 520 F.2d 540 (9th Cir. 1975).

///

Further, the Court and the parties have great flexibility with regard to evidence that may be used on a summary judgment proceeding. 10 C. Wright & A. Miller, Federal Practice and Procedure, § 2721 at 472 (1973).

In this case both parties have moved for summary judgment and, as such, the parties have substantially agreed upon all of the material facts necessary for a final disposition of the case on the legal issues presented in the respective motions. However, simply because both parties have moved simultaneously for summary judgment does not, standing alone, empower this Court to enter judgment as it sees fit without determining independently whether a genuine issue of material fact is present. United States v. Fred A. Arnold, Inc., 573 F.2d 605, 606 (9th Cir. 1978); Brawner v. Pearl Assurance Co., 267 F.2d 45, 46 (9th Cir. 1958). 10 C. Wright & A. Miller, Federal Practice and Procedure, § 2720 at 459-461 (1973).

The principal dispute between the parties concerns the pivotal issues of whether the stated facts give rise to a deprivation of constitutional rights for which relief can be granted pursuant to 42 U.S.C. § 1983 and whether MIAA and CPA are immune from liability. These questions are not contingent upon any genuine issue of material fact and, as a result, the Court can determine the relevant issues of law raised in the present motions by entry of summary judgment.

///

///

## IV. LIABILITY

The threshold issue as correctly stated by the Plaintiff is whether the acts of the Defendants in seizing the Plaintiff's aircraft constitute an actionable wrong within the context of 42 U.S.C. § 1983.

Section 1983 provides, in pertinent part, that "...[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any state..., subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." (42 U.S.C. § 1983).

The Plaintiff alleges that the Defendant's seizure of the Plaintiff's aircraft did not comport with Fourteenth Amendment due process requirements in that the seizure of the aircraft for nonpayment of airport user fees deprived the Plaintiff of certain property interests encompassed by the Fourteenth Amendment's protection of liberty and property. Specifically, the Plaintiff charges that the Defendants failed to afford the Plaintiff the requisite notice and an opportunity for hearing as required by statute and the rules and regulations of MIAA and CPA.

It is significant that Public Law 6-58[3] was promulgated by the Congress of Micronesia in 1975 for the purpose of estab-

_ _ _ _ _ _ _ _ _ _ _

[3] Public Law 2-48 superseded Public Law 6-58 by establishing the Commonwealth Ports Authority. The provisions of Public Law 2-48 relative to judicial appeal remain identical to the corresponding provisions of Public Law 6-58.

642

lishing the Mariana Islands Airport Authority. Within Public Law 6-58 are express provisions providing for the enforcement of penalties, fines, liens and other charges by MIAA. Public Law 6-58 provides, in relevant part, as follows:

> Section 5.(3): ... It [the Authority] shall determine the charges of rentals for the use of any property under its management and control, and the terms and conditions under which the property may be used. ... The Authority shall have and may enforce liens to enforce the payment of any such charges through appropriate judicial proceedings. (Emphasis added)

> \* \* \*

> Section 17. Penalties. Any person who violates any provisions of this Chapter, or any valid rule or regulation promulgated under this Chapter, or who refuses or neglects to comply with any lawful order given by the Manager or his delegate concerning the operation of the airports under the control of the Authority, is punishable by a fine of not to exceed $1,000, or by imprisonment not to exceed three months, or both, upon conviction by a court of competent jurisdiction. (Emphasis added)

> \* \* \*

> (5) The Manager of the Authority shall establish rules and regulations governing the assessments of civil penalties.

> \* \* \*

> (b) Said rules and regulations shall also provide notice that failure to pay the final civil penalty assessed by the time set in the rules and regulations may result in collection of said penalty through the High Court of the Territory, or its successor court. (Emphasis added)

It is clear from the foregoing statutory scheme that the legislature expressly structured the enforcement authority of MIAA in such a way that MIAA would be strictly limited in the manner in which it could assess penalties, fines, liens and other charges. In apparent response to this unequivocal legislative mandate, Shoda and MIAA adopted a general provision relating to the imposition of penalties which reads as follows:

> 11.6 Penalties
>
> (a) The violation of these regulations is punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment not to exceed three (3) months, or both upon conviction by a court of competent jurisdiction. Each violation shall constitute a separate enforceable offense. (Emphasis added)

It is well established that liability pursuant to 42 U.S.C. § 1983 arises when one person causes any other person to be deprived of any rights, privileges or immunities secured by the Constitution and laws. Such liability arises not only in the context of one person who "subjects" another to the deprivation of a constitutional right through an affirmative act but also if he omits to perform an act which he is legally required to do that causes the deprivation of which the complaint is made. Johnson v. Duffy, 588 F.2d 740 (9th Cir. 1978); Sims v. Adams, 537 F.2d 829 (5th Cir. 1976).

Defendants Shoda, MIAA and CPA were required by both statute and regulation to enforce penalties, fines, liens and other charges only through appropriate judicial proceedings.

644

Having failed to do so their seizure of the Plaintiff's aircraft is deemed to be unlawful because administrative actions which are taken in violation of statutory authorization or requirement are void and of no effect. Utah Power & Light Co. v. United States, 243 U.S. 389, 410, 37 S.Ct. 387, 61 L.Ed. 791 (1917); Federated Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Federated Maritime Commission v. Anglo-Canadian Shipping Co., 335 F.2d 255, 258 (9th Cir. 1964); City of Santa Clara, California v. Andrus, 572 F.2d 660 (9th Cir. 1978).

It follows, therefore, that the failure of Shoda, MIAA and CPA to act in accordance with the judicial hearing requirements set forth in the applicable statutes and regulations constitute a violation of law that subjects the Defendants to liability under Section 1983. Indeed, the omissions of Shoda, MIAA and CPA betray the conclusion that the Plaintiff was not afforded the minimal protections of due process as expressly provided for by law and, in fact, it is apparent from the record that the Plaintiff was not accorded any due process at all when Plaintiff's aircraft were seized.

The total failure of the Defendants to afford the Plaintiff the necessary judicial forum in which to contest the seizure of its aircraft prior to such seizure compels this Court to find that the Defendants violated the Plaintiff's right to due process. It is a fundamental tenant of constitutional law that no person shall be deprived of property without due process of law as provided in the Fourteenth Amendment to the United States

Constitution. The legal authority and precedent are legion in holding that the constitutional rights of any person shall not be abridged without first affording that person the right to reasonable notice and an opportunity to be heard. Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 56 L.Ed.2d 30, 98 S.Ct. 1554 (1978); North Georgia Finishing, Inc. v. D. Chem., Inc., 419 U.S. 601, 42 L.Ed.2d 751, 95 S.Ct. 719 (1975); Fuentes v. Shevin, 407 U.S. 67, 32 L.Ed.2d 556, 92 S.Ct. 1983, reh. denied 409 U.S. 902 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 23 L.Ed.2d 349, 89 S.Ct. 1820 (1969); Mullane v. Central Hanover Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

In the present case the Defendants not only failed to afford the Plaintiff the mandatory judicial proceeding in which to contest the seizure as required by law but they also failed to afford the Plaintiff any reasonable notice or opportunity for an administrative hearing before Shoda, MIAA and CPA initiated the seizure of Plaintiff's aircraft. This conduct clearly falls below any acceptable standard of due process and, as such, liability must attach to the conduct of the Defendants under 42 U.S.C. § 1983.

### A. Liability of Shoda

Defendant Shoda contends that he should not be held liable because he is entitled to the defense of good faith. The good faith defense represents an element of qualified immunity from Section 1983 liability that public officers enjoy if they act in compliance with a valid statute. See Procurier v. Navarette, 434

U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1977); <u>Wood v. Strickland</u>,
420, U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); <u>Schener v.
Rhodes</u>, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974);
<u>Johnson v. Duffy</u>, 588 F.2d 740 (9th Cir. 1978).

To determine if liability attaches under Section 1983
the test is whether the public officer "knew or reasonably should
have known that the action he took within his sphere of official
responsibility would violate the constitutional rights of [Plain-
tiff], or if he took the action with the malicious intention to
cause a deprivation of constitutional rights or other injury to
[Plaintiff]." <u>Harlow v. Fitzgerald</u>, ____ U.S. ____, 73 L.Ed.2d
396, 102 S.Ct. ____ (1982); <u>O'Conner v. Donaldson</u>, 422 U.S. 563,
95 S.Ct. 2486, 45 L.Ed.2d (1975); <u>Wood v. Strickland</u>, <u>supra</u>.

Shoda claims that he was only motivated to seize the
Plaintiff's aircraft by official policy as reflected in Section
1.11 of the regulations which provides, that, "No person shall
land an aircraft or take off from the airport or use the opera-
tional area except upon the payment of such fees and charges as
may from time to time be approved and published by the Authority..."
Thus, Shoda argues that he was "just following the rules". Shoda
argues further that the enforcement of such a policy cannot be
fairly construed as causing a violation of Plaintiff's constitu-
tional rights. The Court agrees that the enforcement of such a
policy does not create a per se violation of the Plaintiff's
constitutional rights. Rather, it is the manner in which the
Defendant chose to enforce the policy that gives rise to a violation

of Plaintiff's constitutional rights. Consequently, if Shoda had simply followed the enforcement procedures as provided for in P.L. 2-48 and P.L. 6-58 by first seeking relief in a judicial proceeding the due process rights of the Plaintiff would have been secured and no constitutional violation would exist.

Shoda chose, however, to ignore both the statutorily mandated enforcement procedures and the enforcement procedures provided for in the regulations of MIAA and CPA. Shoda attempts to excuse his failure to comply with the statute and the regulations by explaining that he knew of no other way "short of judicial action" to enforce the claims of MIAA and CPA. Moreover, in his deposition taken in this action Shoda made the following statement in response to a question by counsel for Plaintiff:

> "Q. Did you ever consider taking them
> to court and suing them for the
> money or seeking judicial inter-
> vention in the whole matter?
>
> A. No. They used the facilities.
> They don't expect a free lunch on
> these facilities."

Based upon the foregoing statements of Defendant Shoda, the Court finds the conclusion inescapable that Shoda's decision to seize the Plaintiff's aircraft on May 19, 1981 and October 31, 1981 was clearly unreasonable and in contravention of valid statutory authority. Such conduct cannot be characterized as having been performed in good faith nor can it be said that Shoda's action would not cause injury to the Plaintiff. Having failed to establish either reasonableness or good faith in defense

648

of his conduct, the Defendant Shoda cannot avail himself of the qualified immunity defense and thereby insulate his actions from liability under 42 U.S.C. § 1983.  The Court, therefore, holds that the Defendant Shoda is liable to the Plaintiff under Section 1983 for the unlawful seizures of Plaintiff's aircraft.

### B.  Liability of MIAA and CPA

The Plaintiff contends that the Defendants MIAA and CPA are equally as liable as Defendant Shoda on the grounds that Shoda, the highest executive of MIAA and CPA, is a public official whose acts can fairly be said to represent the official policy of MIAA and CPA.  Defendants MIAA and CPA, on the other hand, contend that MIAA and CPA are not responsible for the acts of an employee like Shoda unless official policy was the moving force giving rise to the constitutional violation.

Both Plaintiff and Defendants correctly cite the general holding of Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) that local government entities are not liable for the constitutional torts of employees under the theory of respondeat superior merely because they are employers. The court in Monell stated, in relevant part as follows:

> "We conclude, therefore, that a local govern-
> ment may not be sued under § 1983 for an
> injury inflicted solely by its employees or
> agents.  Instead, it is when execution of a
> government's policy or custom, whether made
> by its lawmakers or by those whose edicts
> or acts may fairly be said to represent
> official policy, inflicts the injury that
> the government as an entity is responsible
> under § 1983."  (Emphasis added) 98 S.Ct. at
> 2037-38.

Similarly, in the present case, the court concludes that the acts of the Defendant Shoda were clearly intended to represent the official policy of MIAA and CPA. This is particularly true when one considers that Shoda as executive director of MIAA and CPA possessed (1) full charge and control of the operations of the airports[4/] (2) power to ensure that all of the rules and regulations of the Authority were enforced[5/] (3) authority to organize, coordinate and control the services of the Authority employees[6/] and (4) ex-officio membership in the Board of Trustees for the Authority[7/]. Thus, this case unquestionably involves official policy of MIAA and CPA as reflected in the "edicts and acts" of its executive director.

To hold otherwise would be tantamount to insulating MIAA and CPA from the responsibility to establish appropriate procedures to insure that such serious violations of constitutional rights as those present in the instant case are not repeated and do not go unanswered. MIAA and CPA must be accountable for the conduct of their chief executive. More importantly, in view of the expansive authority that is conferred upon the executive director by statute and by regulation it cannot be emphasized enough that, as a practical matter, the principal way that MIAA

- - - - - - - - -

[4/]P.L. 6-58, § 9
[5/]P.L. 6-58, § 10(1)
[6/]P.L. 6-58, § 10(6)
[7/]P.L. 6-58, § 10(7)

and CPA conduct their official business is by and through their executive director. This is because the identity of MIAA and CPA are so inextricably tied together with the identity of the executive director that the division of authority between the two entities is often blurred or non-existent. Consequently, the Court finds that Defendant MIAA and CPA are liable under 42 U.S.C. § 1983 for the unlawful seizures of the Plaintiff's aircraft.

## V. ELEVENTH AMENDMENT IMMUNITY

Since it has been determined that the Defendants violated the Plaintiff's right to due process by seizing the Plaintiff's aircraft without availing themselves of the necessary judicial proceedings as required by both statute and regulation, the sole remaining issue is whether the Defendants are immune from liability for such seizure pursuant to 42 U.S.C. § 1983. The Court must decide whether the Eleventh Amendment is applicable in the Commonwealth of the Northern Mariana Islands as it is in the several states. Based on the discussion that follows the Court concludes that the Covenant expressly rejects the proposition that the Eleventh Amendment is applicable within the CNMI.[8]

- - - - - - - - -

[8] In view of the Court's holding that the Covenant interposes no Eleventh Amendment immunity bar relative to claims brought pursuant to 42 U.S.C. § 1983, the Court need not discuss the alternate theory advanced by the parties to the effect that MIAA and CPA are "state agencies" or "arms of the state" for the purposes of 42 U.S.C. § 1983. See generally, Jackson v. Hayakawa, 682 F.2d 1344 (9th Cir. 1982); Ronwin v. Shapiro, 657 F.2d 1071, 1073 (9th Cir. 1981), citing Edelman v. Jordan, 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). Accord: Rultedge v. Arizona Bd. of Regents, 660 F.2d 1345, 1349 (9th Cir. 1981).

It is well established that states are not persons within the meaning of 42 U.S.C. § 1983. <u>Quern v. Jordan</u>, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). This is so because the Eleventh Amendment bars suits against states and their "alter ego" agencies when they are sued directly in federal court either for damages or for declaratory and injunctive relief. The Eleventh Amendment provides in relevant part that "the judicial power of the United States shall not be construed to extend any suit in law or equity, commenced or prosecuted against one of the United States..."

Although it is clear that the Eleventh Amendment applies to each of the several states the issue remains whether the Eleventh Amendment applies to the Commonwealth of the Northern Mariana Islands ("CNMI").

Article V, Section 501(a) of the Covenant entitled "Applicability of Laws" expressly sets forth those provisions of the Constitution of the United States which are applicable to the CNMI. Section 501(a) reads as follows:

> "(a) To the extent that they are not applicable of their own force, the following provisions of the Constitution of the United States will be applicable within the Northern Mariana Islands as if the Northern Mariana Islands were one of the several States: Article I, Section 9, Clauses 1.2 and 8; Article I, Section 10, Clauses 1 and 3; Article IV, Section 1 and Section 2, Clauses 1 and 2; Amendments.1 through 9, inclusive; Amendment 13; Amendment 14; Section 1; Amendment 15; Amendment 19; and Amendment 26; provided, however, that neither trial by jury nor indictment by grand jury shall

be required in any civil action or criminal prosecution based on local law, except where required by local law. Other provisions of or amendments to the Constitution of the United States, which do not apply of their own force within the Northern Mariana Islands, will be applicable within the Northern Mariana Islands only with the approval of the Government of the Northern Mariana Islands and of the Government of the United States."

Based on the foregoing language of Section 501(a), it is clear that the Eleventh Amendment is not expressly enumerated as one of the amendments that is to be applicable within the CNMI as if the CNMI were one of the several states. Further, there is no question that neither the Government of the CNMI nor the Government of the United States has approved any law, compact or treaty that would otherwise have the effect of making the Eleventh Amendment applicable to the CNMI.

More importantly, the Court rejects any argument that the Eleventh Amendment may be applicable of its own force without being expressly provided for in the Covenant. There is certainly no merit to the claim that the Eleventh Amendment applies of its own force because it constitutes a fundamental right. See Commonwealth of the Northern Mariana Islands v. Atalig, DCA No. 82-9003, Decided March 31, 1983. No authority has been cited that would elevate the Eleventh Amendment to the stature of other amendments that seek to preserve or promote similar fundamental rights. To the contrary, the Eleventh Amendment functions to restrict the "rights" of persons to sue the state in federal court.

653

This Court cannot, therefore, conclude that the Eleventh Amendment operates of its own force within the CNMI. The Court reaches this conclusion after carefully reviewing the express language of Section 501(a) together with the applicable legislative history of the Covenant. The Court is also mindful of its role of construing the relevant rules of statutory construction within the context of Section 501(a).

The starting point in construing any given statutory scheme is to look to the language of the statute itself. U.S. Lines Inc. v. Boldridge, 677 F.2d 940 (C.A.D.C. 1982). The plain language of the statute controls its interpretation. Escondido Mut. Water Co. v. F.E.R.C., 692 F.2d 1223 99th Cir. 1982). Absent any ambiguity the language of the statute itself should ordinarily be regarded as conclusive. U.S. v. Mehrmanesh, 689 F.2d 822 (9th Cir. 1982).

In construing a statute the views of the Court may not be substituted for the clearly delineated intent of the legislature. State of Israel v. Motor Vessel Nili, 435 F.2d 242, certiorari denied 91 S.Ct. 1232, 401 U.S. 994, 28 L.Ed.2d 532 (5th Cir. 1970). Commenting on the duty to exercise judicial restraint Mr. Justice Cardozo wrote: "We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take this statute as we find it." Anderson v. Wilson, 289 U.S. 20, 27, 53 S.Ct. 417, 420, 77 L.Ed. 1004 (1933).

///

Finally, the statute must be applied in its present form unless doing so would result in "manifest injustice" or unless there is statutory direction or legislative history to the contrary. Scarboro v. First American Natl. Bank of Nashville, 619 F.2d 621, certiorari denied 101 S.Ct. 572, 449 U.S. 1014, 66 L.Ed.2d 472 (6th Cir. 1980). The Court may only look beyond the express language of the statute where the literal interpretation thwarts the purpose of the overall statutory scheme or leads to an absurd result. Trailor Train Co. v. State Board of Equalization, 697 F.2d 800 (9th Cir. 1983).

Where, as in the present case, the language of the Covenant is clear and unambiguous the Court finds that it cannot look beyond the language of the Covenant to conclude that the framers of the Covenant intended a different result. The Court will not intervene and substitute a contrary view for what was clearly expressed in the Covenant. Moreover, the Court can find no support for the argument that upholding the literal interpretation of the Covenant would frustrate the legislative intent underlying the Covenant or lead to an absurd result. As such, the Court holds that the Eleventh Amendment has no application in the CNMI and may not defeat an otherwise valid claim brought pursuant to 42 U.S.C. § 1983.

///
///
///
///

## VI. CONCLUSION

For the reasons stated hereinabove, the Court grants Plaintiff's motion for partial summary judgment and denies Defendants' cross-motion for partial summary judgment. The Court finds that the Defendant Shoda is liable in his official capacity as executive director of MIAA and CPA to the Plaintiff in an amount to be determined at trial under 42 U.S.C. § 1983. The Court further finds that Defendants MIAA and CPA are liable to the Plaintiff in an amount to be determined at trial under 42 U.S.C. § 1983. The Court concludes that Defendants Shoda, MIAA and CPA violated Plaintiff's constitutional rights to due process by seizing Plaintiff's aircraft without affording Plaintiff a hearing before a judicial tribunal as required by P.L. 2-48 and P.L. 6-58 together with the applicable provisions of the rules and regulations of MIAA and CPA.

Defendants Shoda, MIAA and CPA are hereby enjoined from seizing or otherwise interfering with the Plaintiff's aircraft without first affording the Plaintiff an opportunity for a judicial hearing in accordance with the applicable provisions of P.L. 2-48, P.L. 6-58 and the rules and regulations of MIAA and CPA.

_May 26, 1983_
Date

ALFRED LAURETA
United States District Judge